JAMES LYONS, Plaintiff, v. TURNER CONSTRUCTION COMPANY *et al.*,
Defendants and Third–Party Plaintiffs-Appellants (Riverside Corporation,
Third–Party Defendant-Appellee).

First District (2nd Division)   No. 1—88—2084

Opinion filed March 6, 1990.

Steven B. Belgrade and John A. O'Donnell, both of Andich & Belgrade, of Chicago, for appellants.

Thomas A. Carton and Raymond R. Pesavento, both of Bullaro & Carton, Chartered, of Chicago, for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

Third-party plaintiffs Turner Construction Co. and Turner Construction Co. of Texas filed a third-party complaint seeking indemnity from third-party defendant Riverside Corp. pursuant to an indemnification clause contained in a contract entered into by the parties. Although the transaction had a number of contacts with the State of Texas, and the indemnification provision in question would have been enforceable under Texas law, the trial court, applying Illinois law, dismissed the third-party complaint. We affirm.

Turner Construction Co. and Turner Construction Co. of Texas (collectively, Turner) are general contractors who were hired to erect a building in Houston, Texas. Riverside Corporation (Riverside) is a subcontractor engaged by Turner to install two construction hoists and related equipment in connection with the Houston project. The contract between Turner and Riverside further provided that Riverside would supply workers to assemble and dismantle the hoist towers, and contained the following indemnification provision:

> "The Subcontractor [Riverside] hereby assumes entire responsibility and liability for any and all damage or injury of any kind or nature whatever (including death resulting therefrom) to all persons, whether employees of the Subcontractor or otherwise, and to all property caused by, resulting from, arising out of or occurring in connection with [work to be performed under the contract]."

The issue in this appeal is the enforceability of this indemnification provision.

Plaintiff Lyons, an Illinois resident, was sent by Riverside to Houston to work on the construction hoists, and in the course of performing his duties on the work site, he suffered serious injuries. He filed a complaint in the circuit court of Cook County on December 30, 1982, alleging Turner was negligent in its operation of the project. An amended complaint was filed March 23, 1983. Turner filed a third-party complaint against Riverside on May 11, 1984, relying on the indemnification provision set forth above.

Riverside filed a motion to dismiss the third-party complaint on August 27, 1984, alleging that dismissal was proper for two reasons. First, that enforcement of the indemnification provision is prohibited as contrary to the public policy of this State because section 1 of "An Act in relation to indemnity in certain contracts" (the Indemnification Contracts or Agreements Act) (Ill. Rev. Stat. 1981, ch. 29, par. 61) invalidates indemnity agreements in construction contracts that hold a party harmless for its own negligence. Second, that apart

from considerations of public policy, Illinois choice of law rules lead to the conclusion that Texas law should not be applied on these facts because Illinois has the most significant contacts with the transaction; therefore, as part of Illinois substantive law, section 1 is controlling and mandates dismissal.

Both the public policy and the choice of law issues were briefed, and, on May 13, 1985, after hearing oral argument, the trial judge granted Riverside's motion to dismiss. The order does not specify the grounds for dismissal; however, the judge did make the following statements at the hearing:

"We are dealing strictly with a cause of action between these two parties based upon an allegation of a breach of an express indemnity clause of a contract between the two, which express indemnity provisions have been declared in very certain terms to be against the public policy of the State of Illinois ***.

We have a situation here where we have a contract in which it seems to me that we are dealing with a number of items here in which—well, for example, negotiations went on here in Illinois as well as Texas. The deposition testimony indicates the fabrication by Riverside in Illinois, which was a necessary pre-condition, obviously, to the installation.

So for those reasons, Illinois certainly has a stake in these proceedings. So that's why I am sustaining the motion. Thank you, gentlemen."

Three years later, on May 23, 1988, Turner filed a motion pursuant to Illinois Supreme Court Rule 304(a) (107 Ill. 2d R. 304) requesting the trial court to make its dismissal order of May 13, 1985, final and appealable. At a hearing held on that motion on May 31, 1988, a question was raised as to whether the earlier dismissal was based solely on the public policy argument or also on the ground that Illinois law was the appropriate choice of law. This issue arose because Turner was concerned about the preclusive effect a decision that Illinois law was applicable might have on parallel proceedings it had initiated in Texas. Turner notes, and Riverside does not dispute, that the indemnification provision would be enforceable under Texas law. (*Firemen's Fund Insurance Co. v. Commercial Standard Insurance Co.* (Tex. 1972), 490 S.W.2d 818.) Turner implies that, if the trial court's ruling was based solely on public policy, the different view of public policy adopted by the State of Texas may allow the suit to progress in the Texas courts. The circuit judge stated on the record at the May 31, 1988, hearing that his May 13, 1985, order was based

on the ground that Illinois law was applicable under choice of law principles, and modified that order to include Rule 304(a) language.

On June 15, 1988, Turner filed an "Emergency Motion for Reconsideration" asking the trial court to vacate its May 13, 1985, and May 31, 1988, orders, to enter a new order finding that Texas law applied to the provision at issue, and to deny the motion to dismiss. On June 16, the motion for reconsideration was denied. A notice of appeal was filed on June 28, 1988.

Turner's primary goal in this appeal is to obtain a ruling that Texas law applies and, since the indemnification agreement is enforceable under Texas law, to obtain a reversal of the trial court's dismissal of its third-party complaint. However, we cannot reach the choice of law question in view of the effect that section 1 of the Indemnification Contracts or Agreements Act has on this litigation.

█ In resolving disputes based on contractual rights, Illinois courts have adopted the analysis of the Restatement (Second) of Conflicts of Law §188 (1971) (hereinafter Restatement (Second)) when determining whether Illinois law or the law from some other State should be applied where the contract has connections with more than one State and the parties have not made an explicit and effective choice of law. (*Illinois Tool Works v. Sierracin Corp.* (1985), 134 Ill. App. 3d 63, 479 N.E.2d 1046; *Champagnie v. W.E. O'Neil Construction Co.* (1979), 77 Ill. App. 3d 136, 395 N.E.2d 990; accord *Palmer v. Beverly Enterprises* (7th Cir. 1987), 823 F.2d 1105.) Under the two-tier Restatement approach, the choice of law turns both on which State has the most significant relationship to the transaction and on an analysis of the various policy interests stated in section 6, which include the relevant policies of the forum and of other interested States. The Restatement is silent on the weight to be given these policy considerations: "The court must decide for itself whether the purposes sought to be achieved by a local statute or rule should be furthered at the expense of the other choice-of-law factors ***." Restatement (Second) §6, comment *e* (1971).

However, one commentator has recently noted that courts following the modern choice of law approach will not enforce foreign law that is contrary to a fundamental public policy of the forum. (J. Corr, *Modern Choice of Law and Public Policy: The Emperor Has the Same Old Clothes*, 39 U. Miami L.R. 647 (1985).) Illinois is among the States adhering to this approach. (*Marchlik v. Coronet Insurance Co.* (1968), 40 Ill. 2d 327, 239 N.E.2d 799; *Potomac Leasing Co. v. Chuck's Pub, Inc.* (1987), 156 Ill. App. 3d 755, 509 N.E.2d 751.) Professor Corr suggests that the great variability observed in the deci-

sions applying this rule results from the difficulties courts encounter in determining when a public policy of a State is sufficiently important to justify a refusal to apply foreign law, and this observation is borne out by an examination of Illinois case law in this area.

Both parties agree that enforcement of the indemnification clause at issue here is prohibited if section 1 of the Indemnification Contracts or Agreements Act is controlling. This statute provides:

> "With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable." (Ill. Rev. Stat. 1981, ch. 29, par. 61.)

Two decisions by this court have specifically considered whether this statute prohibits application of another State's law to validate such agreements. (*Donaldson v. Fluor Engineers, Inc.* (1988), 169 Ill. App. 3d 759, 523 N.E.2d 1113; *Champagnie v. W.E. O'Neil Construction Co.* (1979), 77 Ill. App. 3d 136, 395 N.E.2d 990.) The decisions reach conflicting results.

In *Champagnie,* plaintiff, an Illinois resident, brought a negligence action against the general contractor which had hired his employer, a subcontractor, to work on a construction project in Wisconsin. The contract between the general contractor and the subcontractor contained an indemnification provision similar to the one used in this case. The contract did not contain a choice of law provision. The court refused to apply the public policy doctrine, relying in part on the following language from the Restatement (Second) regarding the recognition of foreign causes of action:

> "Actions should rarely be dismissed because of the rule of this Section. To come within the scope of the present rule, the local policy must be sufficiently strong to outweigh a state's natural desire to open the doors of its courts to suits involving foreign facts. A court should not refuse to entertain such a suit unless to do so, in the words of Judge Cardozo, 'would violate some fundamental principle of justice, some prevalent conception of morals, some deep-seated tradition of the commonweal.' (*Loucks v. Standard Oil Co.*, 224 N.Y. 99, 111, 120 N.E.2d 198, 202 (1918).)" Restatement (Second) §90, comment *c* (1971).

Further reliance was placed on two Illinois Supreme Court cases stressing the evil or repugnant result which would obtain if foreign law were enforced. (*Nonotuck Silk Co. v. Adams Express Co.* (1912), 256 Ill. 66, 99 N.E. 893; *Pope v. Hanke* (1894), 155 Ill. 617, 40 N.E. 839.) Finally, the court found it significant that prior to the enactment of section 1, Illinois decisions held that construction contracts indemnifying against one's own negligence were not considered void as against public policy.

Nine years later, the court in *Donaldson* reached a sharply different conclusion, holding that section 1 barred enforcement of an indemnification provision which would have been enforced if foreign law controlled. The facts were again very similar to those we have here and in *Champagnie*. However, the contract between the subcontractor and the general contractor contained an express choice of law provision. The court consequently applied section 187 of the Restatement, which provides that an explicit choice of law provision in a contract will not be honored if the application of foreign law is contrary to a fundamental policy of a State with a materially greater interest than the chosen State. The court noted that the explicit language of section 1 established that these agreements were against public policy and that this language was sufficient to indicate a fundamental public policy within the meaning of the Restatement.

■ We reaffirm the reasoning of the *Donaldson* decision. The existence of an express choice of law provision in that case, requiring application of a different section of the Restatement, does not render *Donaldson* inapplicable here; the vigor of a fundamental public policy is the same in either situation. We find that the result obtained in *Champagnie* gives insufficient weight to the clear and unmistakable language of the statute as enacted by our legislature. The admonition of the Illinois Supreme Court in *Roanoke Agency, Inc. v. Edgar* (1984), 101 Ill. 2d 315, 327, 461 N.E.2d 1365, 1371, is entirely appropriate here:

"When the legislature has declared, by law, the public policy of the State, the judicial department must remain silent, and if a modification or change in such policy is desired the law-making department must be applied to, and not the judiciary, whose function is to declare the law but not to make it."

Cases from other jurisdictions support the conclusion we reach here. For example, in *Bethlehem Steel Corp. v. G.C. Zarnas & Co.* (1985), 304 Md. 183, 498 A.2d 605, a majority of the Maryland Court of Appeals based its refusal to enforce an indemnification agreement contained in a construction contract on a statute substantially similar

to our section 1, which included a statement that such an agreement "is against public policy and is void and unenforceable." Other cases declining to apply the public policy doctrine to construction indemnification agreements are distinguishable on their facts. (See *Jarvis v. Ashland Oil, Inc.* (1985), 17 Ohio St. 3d 189, 478 N.E.2d 786 (public policy doctrine not applied to defeat express choice of law provision because forum did not have materially greater interest than chosen State); *Jemco, Inc. v. United Parcel Service, Inc.* (Fla. Dist. Ct. App. 1981), 400 So. 2d 499 (statute did not contain a blanket prohibition and did not make reference to public policy), *petition denied* (Fla. 1982), 412 So. 2d 466.) Moreover, the policy underlying section 1 is to motivate contractors to take all precautions necessary for the safety of construction workers and the general public, a policy that would be undermined by upholding indemnification agreements of the type at issue here. *Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 336 N.E.2d 881.

■ Accordingly, we hold that Texas law cannot be applied to validate the construction contract indemnification agreement at issue in this case because such agreements violate a fundamental public policy of the State of Illinois. In light of the disposition we make of this matter, we need not consider Turner's alternative contention, namely, that we should reverse the decision of the trial court because the judge erred in his determination that Illinois law was applicable under Illinois choice of law principles. *Illinois Racing Board v. Hammond* (1977), 56 Ill. App. 3d 609, 371 N.E.2d 1189 (an appellate court should not consider contentions which are not essential to the determination of the appeal).

Affirmed.

DiVITO, P.J., and HARTMAN, J., concur.