**Tomra HINKLE, a minor, by Patricia Hinkle, her mother and next friend, and Patricia Hinkle and Thomas Hinkle, individually, Plaintiffs–Appellants,**

v.

**William HENDERSON, M.D., Defendant–Appellee.**

No. 97–1820.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 6, 1997.

Decided Feb. 2, 1998.

Lance Wittry (argued), Indianapolis, In, for Plaintiffs–Appellants.

Richard E. Stites (argued), Livingston, Barger, Brandt & Schroeder, Bloomington, IL, for Defendant–Appellee.

Before CUMMINGS, MANION and EVANS, Circuit Judges.

MANION, Circuit Judge.

When Tomra Hinkle was born prematurely she was blind; she has since experienced other physical and mental problems. On her behalf her mother sued, among others, the obstetrician whose alleged malpractice (during the labor and delivery) caused these problems. In her previous appeal we reversed the district court's determination that the Illinois eight-year statute of repose had expired, but on remand directed the court to consider the alternative defense of whether the plaintiff exercised reasonable diligence in obtaining service of process over eight years after the injury occurred. The district court again dismissed the suit, and this time we affirm.

### I.

 Tomra Hinkle's mother sued her obstetrician in state court after Tomra was born blind in January 1984; Tomra suffered from other developmental problems as well. But Mrs. Hinkle waited until January 1992, exactly eight years later, to sue on behalf of her daughter. She then waited another eight months before voluntarily dismissing her suit in September 1992. With a new lawyer she re-filed her case 11 months later in federal court, which had diversity jurisdiction over her claim. The district court dismissed the new suit after finding Illinois' eight-year medical malpractice statute of repose had run on her claim. But Illinois' "savings statute" allows a plaintiff an additional year to re-file a case if she voluntarily dismisses her original suit. We reversed the district court's dismissal, *see* *Hinkle v. Henderson*, 85 F.3d 298 (7th Cir.1996) *(Hinkle I)*, though we remanded so that the court could consider defendant Henderson's alternative ground for dismissal—the "plaintiffs failed to exercise reasonable diligence to obtain service in the first action under [Illinois Supreme Court] Rule 103(b) and the Illinois cases that have established the appropriate standard for reasonable diligence." 85 F.3d at 306.[1]

---

1. While sitting in diversity, a federal court applies state service of process rules if they are an integral part of the state statute of limitations or repose. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751–52, 100 S.Ct. 1978, 1985–86, 64 L.Ed.2d 659 (1980). A state's medical malprac- tice statute of repose "establishes a deadline after which the defendant may legitimately have peace of mind; it also recognizes that after a certain period of time it is unfair to require the defendant to attempt to piece together his defense to an old claim." *Id.* at 751, 100 S.Ct. at 1985–86

On remand, the district court again dismissed the suit after finding that Hinkle had indeed delayed too long in effecting service of process. In so doing, the court rejected the recommendation of the magistrate judge that Hinkle's suit be dismissed without prejudice;[2] the court concluded that Illinois law compelled dismissal with prejudice. Our task on appeal is to determine whether Hinkle is correct that the Illinois Supreme Court would not approve of the district court's dismissal in this case, or, at the very least, would not approve of dismissal with prejudice. *See Todd v. Societe BIC, S.A.*, 9 F.3d 1216, 1221 (7th Cir.1993) (en banc) ("When acting under the diversity jurisdiction, a federal court must attempt to decide the case as the highest court of the state supplying the law would do.").

## II.

■ As we stated in *Hinkle I*, the Illinois savings statute "affords plaintiffs a second chance to have their case heard on the merits when their first suit is dismissed for some procedural defect." 85 F.3d at 302. But as we also noted then,

> [P]laintiff waited until the very last day of the eight-year repose period to file suit, then took no action in the circuit court for eight months, failing even to attempt service on defendant, received a voluntary dismissal, and finally waited just short of one year to refile the case in district court, at long last serving defendant more than nine years after the alleged acts of negligence. Unaware that plaintiff filed suit in circuit court, defendant's ability to predict liability was undoubtedly compromised.

*Id.* at 303.

Thus, the problem with Tomra Hinkle's federal court case relates to her initial state court suit against Dr. Henderson (originally, there were other defendants, but they have been voluntarily dismissed by Hinkle).

While the federal suit technically was filed within the one-year time period allowed by Illinois' savings statute, Hinkle's initial state suit lay pending in an Illinois court for eight months before her attorney voluntarily dismissed it. In that time, she never served Dr. Henderson with the complaint.

A suit that is filed but not served has no legal impact because Illinois' (as in most jurisdictions) rules of civil procedure require service of process; otherwise the defendant typically is unaware that he has been sued. In Illinois service "is the sole legally sufficient means of alerting defendants to the pendency of a civil suit," and prompt service is required so that a defendant may "investigate, prepare and litigate the issues raised." *O'Connell v. St. Francis Hospital*, 112 Ill.2d 273, 97 Ill.Dec. 449, 453, 492 N.E.2d 1322, 1326 (1986). The adage "justice delayed is justice denied" is appropriately used to criticize unnecessarily protracted court proceedings. It certainly applies here; the Illinois Supreme Court has even enacted a rule declaring that suits not served with "reasonable diligence" may (and in some cases must) be dismissed by Illinois courts. Illinois Supreme Court Rule 103(b) provides:

> If the plaintiff fails to exercise reasonable diligence to obtain service prior to the expiration of the applicable statute of limitations, the action as a whole or as to any unserved defendant may be dismissed without prejudice. If the failure to exercise reasonable diligence to obtain service occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice. In either case the dismissal may be made on the application of any defendant or on the court's own motion.

There is no dispute that Hinkle did not serve Henderson during the eight months her suit lay pending in Illinois state court. Hinkle does not claim that she could not find

(discussing Oklahoma statute requiring actual service on the defendant within time allowed by statute of limitations). Illinois Rule 103(b)'s requirement that service be accomplished with "reasonable diligence" promotes both of these functions, making it an integral part of the statute of repose and the standard to be applied in

Hinkle's federal court case. *See id.* at 751–52, 100 S.Ct. at 1985–86.

**2.** A district court reviews de novo a magistrate judge's recommendation on a dispositive motion such as Henderson's in this case. *See* Fed. R.Civ.P. 72(b).

Henderson to serve him (even then, service by publication would have been available under Illinois law, 705 ILCS 405/216). Since 1967, Henderson has maintained an office in Bloomington, Illinois, and he also is listed in the phone book. Hinkle does not excuse her failure to serve; her new attorney seems to suggest that Hinkle's original legal team simply dropped the ball. Whatever the reason for the failure to serve, the issue now is whether that failure dooms her complaint in federal court.

■ The Illinois Supreme Court has had numerous occasions to apply Rule 103(b)'s "reasonable diligence" standard. *See Womick v. Jackson County Nursing Home*, 137 Ill.2d 371, 148 Ill.Dec. 719, 561 N.E.2d 25 (1990) (collecting cases). In nearly each instance, the court has instructed that the standard is a fact-intensive inquiry suited to balancing, not bright lines. Among others, weighed in the balance are these factors: (1) the length of time used to obtain service of process; (2) the activities of the plaintiff; (3) plaintiff's knowledge of the defendant's location; (4) the ease with which the defendant's whereabouts could have been ascertained; (5) special circumstances which would affect plaintiff's rights; (6) actual service on the defendant. *Id.*, 148 Ill.Dec. at 721, 561 N.E.2d at 27. We already have noted that Hinkle did little to effect service on Henderson—in fact, she did nothing—and that she knew where he could be served. And this is not a case where there was a mere delay in "actual service"; to the contrary, Hinkle had not obtained service upon Henderson before dismissing her suit. Furthermore, she has pointed to no "special circumstances" that might have affected her efforts, or more appropriately, lack thereof.

The only remaining factor to consider is the length of time used to obtain service of process. Here, Hinkle's former attorney filed her initial suit on the last possible day under the statute of repose, let it sit in state court for eight months before voluntarily dismissing it (without effecting service), then new counsel took 11 months before refiling her complaint in federal court and serving it shortly thereafter. As the Illinois Supreme Court has stated, "[w]here a plaintiff (1) fails to exercise due diligence, particularly where his failure continues long after the expiration of the statute of limitations; (2) takes a voluntary dismissal ...; and (3) refiles his action ..., even though promptly effecting service on his refiled complaint, justice is truly and unnecessarily delayed." *O'Connell*, 97 Ill.Dec. at 453, 492 N.E.2d at 1326. This sequence describes the procedural history of Hinkle's case, which is why we have no difficulty concluding that the Illinois Supreme Court would approve of a dismissal here. Indeed, since *O'Connell*, Illinois' appellate courts routinely have dismissed cases involving delays equal to (or shorter than) Hinkle's. *See, e.g., Sinn v. Elmhurst*, 243 Ill. App.3d 787, 184 Ill.Dec. 56, 59, 612 N.E.2d 932, 935 (finding dismissal appropriate where eight months elapsed between date complaint was filed and process was served), *appeal denied*, 152 Ill.2d 580, 190 Ill.Dec. 911, 622 N.E.2d 1228 (1993); *Paglis v. Black*, 178 Ill.App.3d 1062, 128 Ill.Dec. 186, 187–88, 534 N.E.2d 206, 207–08 (dismissal appropriate where plaintiffs filed suit just before statute of limitations expired and then waited another five-and-a-half months before attempting service), *appeal denied*, 126 Ill.2d 561, 133 Ill.Dec. 670, 541 N.E.2d 1108 (1989); *Penrod v. Sears*, Roebuck & Co., 150 Ill.App.3d 125, 103 Ill.Dec. 346, 349, 501 N.E.2d 367, 369 (1986) (finding lack of reasonable diligence because plaintiff delayed seven months in obtaining issuance of summons for purposes of serving defendant).

These cases speak loud and clear—Illinois courts look with great disfavor on delays in service of process—and they instruct us that Hinkle's eight-month delay in this case is unreasonable under Illinois law. "Nothing is more critical to the judicial function than the administration of justice without delay," *O'Connell*, 97 Ill.Dec. at 453, 492 N.E.2d at 1326, and a failure to serve a defendant is a punitive type of delay. It deprives the defendant of the time he needs to investigate the basis of a complaint while the facts (and witnesses) are still fresh, while records remain and recollections retain a level of detail. No one benefits from an unserved complaint, but the defendant loses the most. Here, Dr. Henderson finally learned of Hinkle's complaint when served in late August 1993, some

19 months after she filed her initial state court suit (and well over nine years after the alleged negligence). While Hinkle points to her prompt service (within eight days) of her federal suit, it simply was too little, too late. *See O'Connell,* 97 Ill.Dec. at 454, 492 N.E.2d at 1327 (noting that a court may find a Rule 103(b) violation in "circumstances surrounding plaintiff's service of process on his *original* as well as his refiled complaint") (emphasis added). Indeed, if anything, her prompt service of her second complaint convinces us that the Illinois Supreme Court would not excuse her complete failure to serve the first one. *See Womick,* 148 Ill.Dec. at 723, 561 N.E.2d at 29 (noting that "the fact that service [ultimately] was effectuated in only one day reflects the ease with which service of summons could have been had").

### III.

■ The only remaining issue is whether the district court correctly determined that Hinkle's lack of reasonable diligence warranted a dismissal with prejudice rather than without. We agree with the district court that Hinkle's lack of diligence in obtaining service occurred after the statute of repose had run on her claim (this was inevitable, as she filed her state court complaint on the last possible day under the statute). Under these circumstances, Rule 103(b) instructs that the dismissal must be *with* prejudice. *See* Rule 103(b) ("If the failure to exercise reasonable diligence to obtain service occurs after the expiration of the applicable statute of limitations, the dismissal *shall be* with prejudice.") (emphasis added).

■ We reach this conclusion despite Hinkle's efforts to convince us that the statute of repose never ran on her claim because Tomra suffered from a "nonminority legal disability" under Illinois law. (Under Illinois law, 735 ILCS 5 13-212(c), a plaintiff suffering from such a disability may bring her suit at any time without worrying about the statute of limitations or repose.) We need not deter-

mine at this point whether Tomra actually suffers from such a disability because—as the district court properly found—the argument has been waived. The Hinkles could have, and should have, made their argument under § 212(c) once Henderson first moved to dismiss the suit. At that point they could have argued that the district court (in *Hinkle I*) need not determine whether Illinois' one-year savings statute extends a medical malpractice statute of repose (because under § 212(c) the statute would never run on a plaintiff like Tomra). But they did not make that argument, which is why we instructed that the only issue on remand was whether the district court should dismiss the case under Rule 103(b).[3]

■ In all events, even if Tomra suffers from a legal disability (thereby extending the statute of repose), and assuming that the issue has not been waived, at most it means that the district court should have dismissed the suit without prejudice under Rule 103(b) (on account of a lack of diligence in obtaining service *prior* to the running of the statute of repose). The end result would not change because Illinois applies a single refiling rule to a plaintiff who voluntarily dismisses her suit. Once she opts for voluntary dismissal, she has only one additional bite of the apple, or one more chance to make her claim stick. If the second suit is dismissed, for whatever reason and even without prejudice, it may not be refiled. *See Flesner v. Youngs Development Co.,* 145 Ill.2d 252, 164 Ill.Dec. 157, 158, 582 N.E.2d 720, 721 (1991) (dismissing third filing under the single refiling rule even though second filing was dismissed without prejudice).

Here, Hinkle voluntarily dismissed her state court lawsuit against Dr. Henderson; under Illinois' single-refiling rule, her suit in federal court was her last chance to press her malpractice claim. Whether it is dismissed with or without prejudice, it may not be refiled. While Hinkle argues that equity demands a different result, perhaps a reme-

---

3. Hinkle argues that Dr. Henderson himself has waived the waiver argument by not objecting to the magistrate judge's finding on the issue. (The magistrate judge determined that Hinkle could make her argument under § 212(c) because she

had no reason to raise it in *Hinkle I.*) Our own review of the record tells us that Dr. Henderson argued to the district court—just as he argued to the magistrate judge—that Hinkle waived any reliance on § 212(c).

dy short of dismissal, we have no authority to grant her such relief. As we noted at the outset, in diversity cases like this one, our task is to determine what result Illinois' highest court would reach. For the reasons set forth above, we are convinced that in this case the Illinois Supreme Court would find a dismissal with prejudice to be both appropriate and routine.

AFFIRMED.