**Thomas SPINOZZI and Linda Spinozzi, Plaintiffs–Appellants,**

v.

**ITT SHERATON CORPORATION, et al., Defendants–Appellees.**

No. 97–4076.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 15, 1999.

Decided April 1, 1999.

William J. Foote (argued), Dreyer, Foote, Streit, Furgason & Slocum, Aurora, IL, for Plaintiffs–Appellants.

Edmund J. Siegert (argued), Tressler, Soderstrom, Maloney & Priess, Wheaton, IL; William J. Cremer, Cremer, Kopon, Shaughnessy & Spina, Chicago, IL, for Defendants–Appellees.

Before POSNER, Chief Judge, and KANNE and EVANS, Circuit Judges.

POSNER, Chief Judge.

Dr. Thomas Spinozzi, a dentist who lives and works in Illinois, and his wife Linda went to Acapulco on vacation. They stayed at a Sheraton hotel. Dr. Spinozzi fell into a maintenance pit on the hotel grounds and was seriously injured. He and his wife (the wife claiming loss of consortium) brought suit in a federal district court in Illinois, under the diversity jurisdiction, against the Mexican corpora-

tion that owns the hotel, and three affiliates of that corporation. The suit alleges negligence. It was dismissed on summary judgment. The district judge held that under Illinois conflict of laws principles, which of course bind him in this diversity suit, *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), Mexican law governs the substantive issues; and that law, he concluded, bars the plaintiff's claims, mainly because it makes contributory negligence a complete defense to negligence liability and the uncontested facts showed that Dr. Spinozzi had been contributorily negligent. The Spinozzis' appeal challenges both the conflicts ruling—they contend that Illinois rather than Mexican tort law applies—and the ruling that Dr. Spinozzi was contributorily negligent as a matter of law.

 The ownership structure of the Sheraton Acapulco Resort is complex, but to simplify the opinion we shall assume, favorably to the plaintiffs, that it is owned and operated by ITT Sheraton Corporation ("Sheraton"), a Delaware corporation with its principal place of business in Massachusetts, and forget the other defendants. Sheraton advertises its hotels all over the world, including Illinois, and it was in response to an advertisement in Illinois that the Spinozzis decided to stay at the Sheraton Acapulco. In fact, because Mrs. Spinozzi is a travel agent, Sheraton granted the Spinozzis a special rate to induce them to stay at the hotel. The plaintiffs argue that by its promotional activities in Illinois directed particularly to the small group (travel agents and their spouses) to which the Spinozzis belong, Sheraton should be taken to have "caused" *in Illinois* the injury to Dr. Spinozzi. And this injury-causing activity in Illinois, when taken in conjunction with the fact that the plaintiffs are Illinois residents, establishes (the plaintiffs argue) that the preponderance of "contacts" between the plaintiffs and either Illinois or Mexico was with Illinois, and not, as one might suppose from the location of the accident, with Mexico.

Under the *ancien régime* of conflict of laws, this argument would have been a nonstarter. The rule was simple: the law applicable to a tort suit was the law of the place where the tort occurred, more precisely the place where the last act, namely the plaintiff's injury, necessary to make the defendant's careless or otherwise wrongful behavior actually tortious, occurred, *Restatement of Conflicts* §§ 377–378 (1934); 2 Joseph H. Beale, *A Treatise on the Conflict of Laws* § 377.2, pp. 1287–88 (1935), and here that place was Mexico. This and other simple rules of conflict of laws came to seem too rigid, mainly because of such anomalies as suits between citizens of the same state when it was not the state where the accident had occurred. See, e.g., *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). But the search for flexibility led, alas, to standards that were nebulous, such as the "most significant relationship" test of the *Second Restatement* that is orthodox in Illinois, *Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970), and a number of other states. E.g., *Amiot v. Ames*, 166 Vt. 288, 693 A.2d 675 (1997); *Hataway v. McKinley*, 830 S.W.2d 53 (Tenn.1992); *Travelers Indemnity Co. v. Lake*, 594 A.2d 38 (Del.1991); *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071 (Ind.1987); *O'Connor v. O'Connor*, 201 Conn. 632, 519 A.2d 13 (1986); see *Restatement (Second) of Conflict of Laws* § 145(1) (1971).

 Often, however, the simple old rules can be glimpsed through modernity's fog, though spectrally thinned to presumptions—in the latest lingo, "default rules." For in the absence of unusual circumstances, the highest scorer on the "most significant relationship" test is—the place where the tort occurred. *Ingersoll v. Klein, supra*, 262 N.E.2d at 595; *Ferguson v. Kasbohm*, 131 Ill.App.3d 424, 86 Ill.Dec. 605, 475 N.E.2d 984, 987 (1985); *Kuehn v. Childrens Hospital*, 119 F.3d 1296, 1301 (7th Cir.1997); *In re Air Crash Disaster Near Chicago*, 644 F.2d 594, 611, 628–29 (7th Cir.1981); *Travelers Indemnity Co. v.*

*Lake, supra*, 594 A.2d at 47; *Pevoski v. Pevoski*, 371 Mass. 358, 358 N.E.2d 416, 417 (1976); *Restatement (Second) of Conflict of Laws, supra*, § 145 comment e, § 146. For that is the place that has the greatest interest in striking a reasonable balance among safety, cost, and other factors pertinent to the design and administration of a system of tort law. Most people affected whether as victims or as injurers by accidents and other injury-causing events are residents of the jurisdiction in which the event takes place. So if law can be assumed to be generally responsive to the values and preferences of the people who live in the community that formulated the law, the law of the place of the accident can be expected to reflect the values and preferences of the people most likely to be involved in accidents—can be expected, in other words, to be responsive and responsible law, law that internalizes the costs and benefits of the people affected by it.

Only a tiny fraction of hotel guests in Mexico are from Illinois. Illinois residents may want a higher standard of care than the average hotel guest in Mexico, but to supplant Mexican by Illinois tort law would disserve the general welfare because it would mean that Mexican safety standards (insofar as they are influenced by tort suits) were being set by people having little stake in those standards. Of course the plaintiffs do not argue that Illinois tort law should govern *all* accidents in Mexican hotels. They argue for something that is even worse—that each guest be permitted to carry with him the tort law of his state or country, provided that he is staying in a hotel that had advertised there. The domicile of the hotel's owner would be irrelevant. If a French citizen were injured in a hotel in Mexico owned by a German corporation that had advertised in France, the law applicable to his suit against the German corporation would be French law. If in the course of a year citizens of a hundred different countries and U.S. states stayed at the Sheraton Acapulco Resort, Sheraton would be subject to a hundred different bodies of tort law. Inconsistent duties of care might be imposed. *Kuehn v. Childrens Hospital, supra*, 119 F.3d at 1302. A resort might have a system of firewalls that under the law of some states or nations might be considered essential to safety and in others might be considered a safety hazard. Suppose the resort burned down and dozens of injured guests sued: according to the plaintiffs' notion of conflict of laws, each claim would be governed by a different tort regime if each plaintiff was from a different state or country. If the regimes were incompatible, it might be impossible for Sheraton to escape liability to some of the plaintiffs no matter how careful it had been. Negligence would be strict liability.

Uniformity of tort law and consequent avoidance of anomalies cannot, we recognize, be achieved by an interpretation just of Illinois' conflict of law rules. Guests of the Sheraton Acapulco Resort who come from somewhere else and sue in their home court will be governed by the conflict of laws rules applied by that court, which may differ from Illinois'. But there might be general agreement that the law of the place of the injury is presumptively the right law to apply to issues of duty of care, for the reasons that we have suggested. "[A] state may not exercise jurisdiction to prescribe law with respect to a person or activity having connections with another state when the exercise of such jurisdiction is unreasonable." *Restatement (Third) of the Foreign Relations Law of the United States* § 403(1) (1987). It is unreasonable that the Illinois courts should be setting safety standards for hotels in Mexico.

Sheraton could, it is true, include in all its contracts with its guests a forum-selection clause that would require the guest to sue in a jurisdiction in which *lex loci delicti* (the law of the place of the accident) was the default rule. *Id.*, § 421 comment h; *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). It might, for that

matter, specify the jurisdiction whose tort law would govern in the event of an accident; contractual choice of tort law provisions are generally enforceable. *Chan v. Society Expeditions, Inc.,* 123 F.3d 1287, 1296–98 (9th Cir.1997); *Kuehn v. Childrens Hospital, supra,* 119 F.3d at 1301–02. Sheraton has followed neither course, and this undermines its claim to be concerned with being subjected to the different and even conflicting tort laws of dozens or hundreds of different jurisdictions. *Id.* at 1302. But that cannot be the end of the analysis. There is no rule that there shall be no conflict of laws analysis—that the law of the jurisdiction where the suit is brought (*lex fori*) shall apply—unless the parties could have negotiated a choice of law clause yet failed to do so. So we must forge on.

■ Whenever a legal claim, whether technically it is a contract claim or a tort claim, arises out of a voluntary relationship between injurer and victim, a court applying the *Second Restatement*'s test should ask what body of law the parties would have expected to govern an accident arising out of that relationship. *Esser v. McIntyre,* 169 Ill.2d 292, 214 Ill.Dec. 693, 661 N.E.2d 1138, 1142 (1996); *Restatement (Second) of Conflict of Laws, supra,* § 6(2)(d) and comment g. (If the simple rules of the *First Restatement* were still in force, they would know!) We doubt that Dr. Spinozzi would have thought he was carrying his domiciliary law with him, like a turtle's house, to every foreign country he visited. To change the zoological metaphor, he would not, eating dinner with a Mexican in Acapulco, feel himself cocooned in Illinois law, like citizens of imperial states in the era of colonialism who were granted extraterritorial privileges in weak or dependent states. Law is largely territorial, and people have at least a vague intuition of this. They may feel safer in foreign hotels owned by American chains, but they do not feel that they are on American soil and governed by American law.

It would be different (though we cannot find a case on the point) if Sheraton had promised the Spinozzis a tort regime, in the event of an accident, that would be as favorable to them as Illinois tort law; or if it had induced them to stay at the Sheraton Acapulco Resort by representations concerning safety that might have led them to believe they would have the same legal protection in Mexico as in Illinois. No such representations are alleged. That is why the implication of the plaintiffs' position is, as their lawyer acknowledged at argument, that every foreign guest of a Mexican hotel is governed by his home country's tort law, provided only that the hotel was advertised in his country—the usual case, since it is hard to attract guests without advertising in the country where they live.

The plaintiffs emphasize that the growth in international travel and communications is shrinking the globe in a human sense. But the implication for conflict of laws is the opposite of what they think. It is not that the place of the accident is of diminishing relevance to the choice of law, but that it is of increasing relevance. For in the absence of a choice of law clause in the contract between the injurer and the victim, *lex loci delicti* is the only choice of law that won't impose potentially debilitating legal uncertainties on businesses that cater to a multinational clientele while selecting the rule of decision most likely to optimize safety.

■ The plaintiffs' backup position is that a defense of contributory negligence is repugnant to the public policy of Illinois, and therefore an Illinois court would not enforce that defense even if it would apply the rest of Mexico's tort law to an accident such as this. States do refuse to enforce foreign law that is particularly obnoxious to them. E.g., *Nelson v. Hix,* 122 Ill.2d 343, 119 Ill.Dec. 355, 522 N.E.2d 1214, 1218 (1988); *Maher & Associates, Inc. v. Quality Cabinets,* 267 Ill.App.3d 69, 203 Ill.Dec. 850, 640 N.E.2d 1000, 1006 (1994); *Lyons v. Turner Construction Co.,* 195

Ill.App.3d 36, 141 Ill.Dec. 719, 551 N.E.2d 1062, 1065 (1990); *Potomac Leasing Co. v. Chuck's Pub, Inc.*, 156 Ill.App.3d 755, 109 Ill.Dec. 90, 509 N.E.2d 751, 753–54 (1987); *Larchmont Farms, Inc. v. Parra*, 941 S.W.2d 93, 95 (Tex.1997) (per curiam); *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 834 P.2d 1148, 1153 (1992). But obviously the mere fact that foreign and domestic law differ on some point is not enough to invoke the exception. Otherwise in every case of an actual conflict the court of the forum state would choose its own law; there would be no law of conflict of laws.

The danger of the public policy exception is provincialism: an inability to recognize that a different jurisdiction (especially a foreign country) need not be benighted to have a different approach to a particular legal problem. Recognizing this danger, the courts insist, as in the *Lyons* case, that application of foreign law yield an "evil or repugnant result" for the public policy exception to apply. 141 Ill.Dec. 719, 551 N.E.2d at 1065. In that case the Illinois legislature had declared the rule applied by another state "void as against public policy and wholly unenforceable," *id.*, and the court took this as an authoritative declaration that the rule was indeed repugnant to the public policy of Illinois. *Nelson v. Hix, supra*, states the test this way: Illinois courts will not apply foreign law that is "clearly contrary to the public morals, natural justice or the general interest of the citizens of this State." 119 Ill.Dec. 355, 522 N.E.2d at 1218. The foreign law in that case was Canadian law permitting spouses to sue each other in tort, which Illinois law at the time forbade; the Illinois court applied the Canadian law.

Some years ago, by decision of its highest court, Illinois joined the accelerating trend toward replacing contributory negligence by comparative negligence, that is, reducing contributory negligence from a complete defense to a partial defense. *Alvis v. Ribar*, 85 Ill.2d 1, 52 Ill.Dec. 23, 421 N.E.2d 886 (1981). But it did not do so because it thought contributory negligence, like polygamous marriage, e.g., *Spencer v. People*, 133 Colo. 196, 292 P.2d 971, 973 (1956); *Ng Suey Hi v. Weedin*, 21 F.2d 801, 802 (9th Cir.1927); *People v. Kay*, 141 Misc. 574, 252 N.Y.S. 518, 524–25 (1931), deeply offensive; it thought it outmoded and inferior to comparative negligence. It did use some strong language, calling it for example "repulsive," 52 Ill. Dec. 23, 421 N.E.2d at 895, but if it had really meant this, it would not have made its decision prospective only, as it did. There is an analogy to the principle that a new rule of constitutional law will not be applied in habeas corpus proceedings arising out of convictions that became final before the new rule was announced unless it is necessary to protect the innermost core of fundamental constitutional rights. *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); see 28 U.S.C. § 2244(b)(2)(A). The Illinois courts have not had occasion to decide whether their preference for comparative over contributory negligence should override the different preference of the state whose law would normally govern the accident in question. Other jurisdictions have divided over the issue. Compare *Mills v. Quality Supplier Trucking, Inc.*, 203 W.Va. 621, 510 S.E.2d 280 (1998), and *McDaniel v. Ritter*, 556 So.2d 303, 316–17 (Miss.1989), with *Gray v. Busch Entertainment Corp.*, 886 F.2d 14 (2d Cir.1989) (per curiam).

We think it unlikely that Illinois would refuse to apply Mexican law in this case. When the rule of *Alvis* came to be codified, 735 ILCS 5/21116(c), the Illinois legislature curtailed it, retaining contributory negligence as a complete bar in all cases in which the victim is found to be more than 50 percent responsible for the accident. In light of this provision it is no surprise that the legislation is notably devoid of the "void as against public policy and wholly unenforceable" language that was decisive in *Lyons*. Granted, the statute in *Lyons* was intended to create a contract defense,

but it could have made the contracts to which the defense applied merely voidable.

To apply the public policy exception to the issue of contributory negligence would be to pull on one thread in a complex legal tapestry, a problem that has been discussed extensively in relation to statutes of limitations. *Walker v. Armco Steel Corp.,* 446 U.S. 740, 750–53, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980); *Board of Regents v. Tomanio,* 446 U.S. 478, 485–86, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency,* 421 U.S. 454, 464, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Hinkle v. Henderson,* 135 F.3d 521, 522 n. 1 (7th Cir.1998); *Doe v. Blue Cross & Blue Shield United of Wisconsin,* 112 F.3d 869, 873–74 (7th Cir.1997); *Lewellen v. Morley,* 875 F.2d 118, 120–21 (7th Cir.1989); *Hemmings v. Barian,* 822 F.2d 688, 691 (7th Cir.1987); *Bell v. Fowler,* 99 F.3d 262, 267 n. 3 (8th Cir.1996); *Resolution Trust Corp. v. Everhart,* 37 F.3d 151, 155 (4th Cir. 1994). A statute of limitations typically consists not only of a specified period of years but also of accrual and tolling rules (which are often common law grafts on the statute), and those rules are reciprocals of the length of the period. A short limitations period can be offset by generous accrual and tolling rules, and a long limitations period offset by miserly ones. *Walker,* which involved state accrual rules, is particularly pertinent because of the emphasis the Court placed on the inappropriateness under the *Erie* doctrine (itself a conflict of laws rule) of engrafting the forum state's accrual rules on the foreign state's limitations period. Negligence and contributory negligence bear much the same relation to each other as the specified length of the limitations period and the accrual and tolling rules that transform that fixed length into a varying standard. A state or nation might decide to adopt a high standard of care for potential injurers but offset it by making victims' negligence a complete rather than merely partial defense.

Sometimes it is appropriate to apply the law of more than one jurisdiction, the procedure known in conflicts-speak as "depecage." *In re Air Crash Disaster Near Chicago, supra,* 644 F.2d at 611. But these are cases in which the issues to which the different laws are applied are separable, *id.* at 611 n. 14—for example, capacity and damages, or negligence and a guest statute (as in *Babcock v. Jackson, supra,* 240 N.Y.S.2d 743, 191 N.E.2d at 285) designed to reduce fraud against insurers—rather than parts of an integrated liability standard, as here. It is especially questionable to take a piece of the standard from the common law and another piece from the civil law of a foreign country (Mexico is a civil law, not a common law, jurisdiction), and ask a jury to apply this unnatural hybrid to the facts.

It remains only to consider whether the judge was right to grant summary judgment for Sheraton on the issue of Dr. Spinozzi's contributory negligence; and this brings us at last to the facts. It was 10:30 p.m. when the Spinozzis returned to the hotel from dining out with friends only to find that because of a power outage the hotel was in darkness. Their hotel room was stifling because the air conditioning was not operating, so they went out and sat by the hotel's pool, waiting for the lights to come back on. At some distance from the pool was a maintenance pit, 12 to 14 feet deep, shielded by planters. The entrance to the pit was between two of the planters and was guarded by a low gate on the other side of which a spiral staircase led down to the bottom of the pit. Dr. Spinozzi left the garden area to see whether the lights had come back on in the room occupied by his friends. It was pitch dark, yet rather than walking on one of the paths leading from the poolside area to the hotel, Spinozzi walked into the shrubbery that surrounded that area and in a direction that would bring him to a good vantage point for seeing the window of his friends' room. The gate to the maintenance ditch had been left open. Spinozzi walked through the entrance, thinking he

was on a path that would bring him near the window, and fell into the pit.

We may assume that the hotel was negligent in leaving the gate open, and perhaps in other respects, like not having emergency lighting that would show the location of the pit to any guest who happened to be wandering in the shrubbery. But the question of contributory negligence is simply whether, had Dr. Spinozzi exercised due care (negligence is an injurer's failure to use due care, contributory negligence a victim's failure to use due care), the accident would have been averted notwithstanding the hotel's negligence. The answer is yes, because Spinozzi acknowledged in his deposition that he couldn't see where he was going because of the dark. A careful person who finds himself in a strange area in a foreign country and can't see the ground in front of him will walk in a slow and gingerly manner to avoid tripping; he will feel his way. Had Dr. Spinozzi done that, he would have felt the ground drop suddenly when he reached the staircase beyond the gate and would have grabbed the rail and saved himself from falling. Having stepped off the pedestrian path into a completely darkened area of shrubbery, he had no reason to suppose the surface ahead of him smooth. He strode on regardless. He might as well have been blindfolded. His negligence came close to, if indeed it did not cross the line into, a conscious assumption of the risk of disaster, a form of aggravated negligence. See, e.g., *Young v. State*, 491 P.2d 122 (Alaska 1971); *Grey v. Fibreboard Paper Products Co.*, 65 Cal.2d 240, 53 Cal.Rptr. 545, 418 P.2d 153, 156 (1966).

■ We would have a different case had Dr. Spinozzi been fleeing a fire or rushing to the rescue of a person in distress. Whether a course of action is reasonable and hence consistent with the exercise of due (=reasonable) care depends on the potential benefits of the action as well as on its potential costs. A person who rushes into a burning building to save a child is a lot less likely to be deemed contributorily negligent than a person who rushes into the same building to save his hat. *Eckert v. Long Island R.R.*, 43 N.Y. 502 (1871); *Rossman v. La Grega*, 28 N.Y.2d 300, 321 N.Y.S.2d 588, 270 N.E.2d 313, 315–16 (1971). His action confers benefits as well as imposing costs. No emergency justified Dr. Spinozzi's careless wandering in the dark. He was moved by idle curiosity to know whether the power had come back on. He could easily have satisfied his curiosity by entering the hotel by the conventional path from the pool. He was indeed contributorily negligent as a matter of law, *Mundt v. Ragnar Benson, Inc.*, 61 Ill.2d 151, 335 N.E.2d 10, 14–15 (1975), and while under Illinois law that would merely have reduced his entitlement to damages unless he was adjudged more than 50 percent responsible for the accident (which, however, he very well might be), under Mexican law it bars him and his wife from all recovery. We are sorry to arrive at this conclusion because his injuries were serious and may prevent him from practicing his profession.

We have been citing American rather than Mexican cases on contributory negligence. In doing so we have been following the parties, who, whether because they don't read Spanish or because the principles of contributory negligence are the same in Mexico and the United States notwithstanding the differences between their legal systems, have treated them as the same. In effect they have stipulated to the use of American cases to determine whether Dr. Spinozzi was contributorily negligent, and this is a reasonable stipulation that we accept. *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1218 n. 6 (7th Cir.1995) (applying Illinois law).

AFFIRMED.