# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 06-1506

TED F. CARRIS,

*Plaintiff-Appellant,*

*v.*

MARRIOTT INTERNATIONAL, INC., *et al.*,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 1480—**Joan B. Gottschall**, *Judge.*

_____

ARGUED SEPTEMBER 6, 2006—DECIDED OCTOBER 16, 2006

_____


Before FLAUM, *Chief Judge*, and BAUER and POSNER, *Circuit Judges.*

POSNER, *Circuit Judge.* This appeal from the dismissal of a complaint for failure to state a claim presents a question of conflict of laws that is very similar to the one we resolved in *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842 (7th Cir. 1999). In response to a Sheraton advertisement in Illinois, Spinozzi had made a reservation at a resort hotel that Sheraton owned in Acapulco. One night after he arrived, the lights went out and searching in the dark for a room occupied by his friends he fell into an unguarded maintenance pit on the

hotel grounds. In the ensuing diversity suit he asked the district court in Illinois to apply Illinois rather than Mexican law because Mexican law makes contributory negligence a complete defense to a suit for negligence, while Illinois, like most other U.S. states, has switched to comparative negligence. We ruled that Mexican law applied. That was where the accident occurred and Mexico had a stronger interest than any other jurisdiction in regulating the safety of hotels located there. We also noted the unacceptable burden that would be placed on a hotel if it had to comply with the tort law of every country from which its guests came. But we said that it would be a different case (though we could find no authority on the point) if Sheraton's advertisements in Illinois had stated or implied that an Illinois guest of the Acapulco Sheraton would have the same legal rights that he would have if it were the Chicago Sheraton.

The present suit by Ted Carris against Marriott International, the owner of the Marriott hotel chain, was dismissed on the pleadings and so we accept as true the facts alleged by the plaintiff, according to which: Carris is a fan of the Marriott chain and believes that it maintains "high standards of accommodation *and recreation*" (emphasis added). He is a resident of Illinois, and it was there that by clicking on the Marriott International website he discovered and made a reservation at the Nassau Marriott Resort (NMR) in the Bahamas. NMR advertised on its website (which Carris accessed from Marriott's) that it offers its guests a variety of recreational activities, including jet skiing. Carris believed that NMR was owned by Marriott, and claims he wouldn't have gone there had he known it was merely franchised by Marriott.

At the resort he rented a jet ski, and while operating it in "the permitted area" off NMR's private beach fell off the jet ski, breaking his leg. He drifted for hours in the water

before being rescued by a passing boat. He claims that the accident was caused by NMR's negligence in failing to supervise the jet ski concessionaire, to warn him that the jet ski concession *was* a concession rather than being managed by the resort's employees, to teach him how to operate the jet ski safely, to alert him to the hazards of jet skiing in an ocean, and to equip the jet ski with a "kill switch." We digress to note that allegations of negligence are, despite appearances, essential to his claim. Had the accident occurred despite due care by the resort, the fact that Carris would not have been there had he not thought it was owned by Marriott would not establish legal causation (just "but for" causation, which is never enough for liability), because the misrepresentation would not have increased the risk of an accident. That risk would (assuming due care by NMR) have been just as great had the resort been owned by Marriott. See, e.g., *Berry v. Sugar Notch Borough*, 43 Atl. 240 (Pa. 1899); William M. Landes & Richard A. Posner, *The Economic Structure of Tort Law* 238 (1987).

Carris wants Illinois tort law to govern his case because that law includes an extension of the agency doctrine of respondeat superior that would enable him to fasten vicarious liability on Marriott for negligence by employees of NMR. Had Marriott owned the resort, the negligence of the employees (though probably not of the concessionaire, an independent contractor) would be Marriott's responsibility under that doctrine. Marriott was not their employer, however—NMR, a separate, indeed unaffiliated (in the corporate law sense), corporation was—and so NMR's employees were not Marriott's employees and their negligence would not be imputed to Marriott as a matter of respondeat superior. But if Marriott created the *appearance* that NMR was owned by Marriott, and Carris was led by that appearance to believe that it was owned by Marriott and he relied to his detriment on that belief, then the

doctrine of apparent authority (more commonly of course invoked in contract cases than in tort cases, see, e.g., *Sarkes Tarzian, Inc. v. U.S. Trust Co.*, 397 F.3d 577, 583 (7th Cir. 2005)), would allow him to treat Marriott as if were the employer of NMR's employees. *York v. Rush-Presbyterian-St. Luke's Medical Center,* No. 99507, 2006 WL 1702529, at *17-30 (Ill. June 22, 2006); *Gilbert v. Sycamore Municipal Hospital*, 622 N.E.2d 788, 795-96 (Ill. 1993); *O'Banner v. McDonald's Corp.*, 670 N.E.2d 632, 634-35 (Ill. 1996); *Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156, 166-67 (4th Cir. 1988).

The parties agree, however, that under Bahamian law, as under the English common law, which the Bahamas, a former colony of England, has adopted, apparent authority is not a ground of tort liability. This probably is incorrect. *Armagas Ltd. v. Mundogas S.A. (The 'Ocean Frosté)*, [1986] 2 Lloyd's Rep. 109, 115-16 (House of Lords); *Navarro v. Moregrand Ltd.*, [1951] 2 T.L.R. 674, 680 (Court of Appeal). But we leave the parties to their agreement, and so if Bahamian law applies, Carris's only recourse is against NMR, and presumably he would have to sue it in the Bahamas. So we must determine whether under Illinois conflict of laws principles (for in a diversity suit the federal court applies the conflicts principles of the state in which it sits), Illinois or Bahamian tort law governs this case.

Illinois conflicts principles require the court to select the law of the jurisdiction that has the "most significant relationship" to the events out of which the suit arose, and to the parties. *Esser v. McIntyre*, 661 N.E.2d 1138, 1141 (Ill. 1996). In the case of a tort suit, this analysis usually points to the jurisdiction in which the conduct giving rise to the suit occurred, for a state regulates the safety of the activities that are carried on within its borders. (That was the insight behind the old torts conflict rule of *lex loci delicti*, still the

default rule in tort cases.) And here the regulating jurisdiction is the Bahamas. Carris resists this conclusion, arguing that maybe the accident occurred in international waters, beyond the three-mile limit. That is unlikely, considering what ocean swells would do to such a tiny craft and that Carris claims to have been operating the jet ski in "the permitted area" off the beach when the accident occurred. No matter. The conduct of which he complains is not the accident itself (unlike the case in which the accident victim is a passenger in a boat negligently operated by the defendant) but the absence of instruction in the operation of a jet ski, the absence of safety equipment, and the failure to supervise the concessionaire, all of which acts or omissions occurred before Carris left the beach. He doesn't even complain of the defendant's failure to have rescued him when he fell off the jet ski, a failure that may conceivably (though improbably) have "occurred" (in the sense that the omission of a material fact might be said to occur in the securities prospectus that should have stated the fact) in international waters.

All that Carris has to link the accident to Illinois, then, besides his being a resident of that state—which clearly is not enough by itself, since Marriott is not an Illinois resident and the accident (and the negligent acts that Carris claims caused the accident) occurred elsewhere, see *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 914-16 (7th Cir. 2006); *Spinozzi v. ITT Sheraton Corp.*, *supra*, 174 F.3d at 846; *Bi-Rite Enterprises, Inc. v. Bruce Miner Co.*, 757 F.2d 440, 443 (1st Cir. 1985); *Cummings v. Club Mediterranee S.A.*, 2003 U.S. Dist. LEXIS 19459 (N.D. Ill. 2003); compare *Esser v. McIntyre*, 661 N.E.2d 1138, 1142 (Ill. 1996); *Cook v. Winfrey*, 141 F.3d 322, 329 (7th Cir. 1998)—is that Marriott has a website accessible to anybody in the world who has uncensored Internet access. No one suggests that at its

website or elsewhere Marriott implies that Illinois law would follow an Illinoisian to the Bahamas or that NMR complies with U.S. or Illinois safety standards for the rental, design, or operation of jet skis (on which see National Transportation Safety Board, "Personal Watercraft Safety Study" 35 (NTSB/SS-98/01); Boat Registration and Safety Act, 625 ILCS 45/4 to 45/5)). The State Department even warns travelers that "the water sports and scooter rental industries in the Bahamas are not carefully regulated. Visitors should rent equipment only from reputable operators, and should insist on sufficient training before using the equipment. Every year, people are killed or injured by the improper use of scooters, jet-skis, and personal watercraft or by the careless or reckless operation of such equipment by others. You should insist on seeing proof that operators have sufficient medical and liability insurance. Travelers should also invest in low-cost traveler's insurance that includes medical evacuations, as most American insurance companies do not cover this." U.S. State Department, *Consular Information Sheet: The Bahamas: Safety and Security*, Sept. 25, 2006, http://travel.state.gov/travel/cis_pa_tw/cis/cis_989.html.

So the case really is just like *Spinozzi*—in fact even more clear cut against applying Illinois law, because of the nature of the advertising that drew Carris to the Bahamian resort. If he is right about Illinois principles of conflict of laws, any hotel chain that has a website (and it is doubtful that any hotel chain does not) subjects itself to the tort law of every country whose nationals stay at one of the hotels in the chain, or at least every country that has a conflict of laws standard as spongy as Illinois'. The burden of compliance would be staggering, especially since different countries, having different ideas about safety, might impose inconsistent tort duties. One jurisdiction might think the absence of airbags from vehicles negligent; another might think their

presence negligent because of the danger to children. So how would a hotel equip its airport shuttle van?

Carris argues alternatively that the rejection by Bahamian law (as he assumes) of the apparent authority extension of respondeat superior is so offensive to the fundamental policy of the State of Illinois that the state courts would insist that Illinois tort law govern this case, though not Bahamian water accidents generally. The Bahamas' assumed rejection of a somewhat esoteric (though neither novel nor uncommon) extension of traditional common law principles (esoteric when applied tort as distinct from contract cases) is not so "evil or repugnant" (*Lyons v. Turner Construction Co.*, 551 N.E.2d 1062, 1065 (Ill. App. 1990)) as to offend a fundamental policy of Illinois. It is less "evil or repugnant" than the rejection of comparative negligence, which we held in *Spinozzi* did not offend a fundamental policy of Illinois law, 174 F.3d at 846-49, or than allowing punitive damages to be insured against, held in *International Surplus Lines Ins. Co. v. Pioneer Life Ins. Co.*, 568 N.E.2d 9, 15-17 (Ill. App. 1990), not to offend fundamental principles of Illinois law either. Compare *Donaldson v. Fluor Engineers, Inc.*, 523 N.E.2d 1113, 1113-17 (Ill. App. 1988), and *Pancotto v. Sociedade de Safaris de Mocambique, S.A.R.L.*, 422 F. Supp. 405, 409-12 (N.D. Ill. 1976), the former a case in which Illinois public policy was embodied in a statute rather than in a common law principle; statutes tend to be more emphatic declarations of state policy than judicial decisions, being enacted by legislatures, with their superior democratic legitimacy, rather than devised by courts.

In this case, moreover, the apparent authority doctrine, itself an extension of traditional tort principles, would be stretched so far from its heartland that the state policy supporting the doctrine would be severely attenuated.

Almost everyone knows that chain outlets, whether restaurants, motels, hotels, resorts, or gas stations, are very often franchised rather than owned by the owner of the trademark that gives the chain its common identity in the marketplace. Had Carris really believed that owned and franchised Marriotts abroad have different standards of safety for jet skiing (but why would anyone think that, when trademarks are a representation of *uniform* quality, of which safety is an important dimension in the case of a resort, and the same Marriott trademark covers both its owned and its franchised hotels?), he should have inquired into the ownership of NMR rather than assume that it was owned by Marriott.

AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*