[No. B073239. Second Dist., Div. One. July 6, 1994.]

LINDA C. HERBERT, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Defendant
and Respondent.

**COUNSEL**

Besser & Chapin, Robert S. Besser and Christopher Chapin for Plaintiff and Appellant.

Patterson, Ritner, Lockwood, Zanghi & Gartner, Robert R. Scholl, Greines, Martin, Stein & Richland, Martin Stein, and Roxanne Huddleston for Defendant and Respondent.

## OPINION

**VOGEL (Miriam A.), J.**—While waiting in an examining room at the UCLA Medical Center, three-year-old Jonathan Herbert got his hands on some used needles and stuck himself. His mother's first thought was of AIDS, and although Jonathan then and later tested negative, Jonathan's mother sued the Regents of the University of California for negligent infliction of emotional distress. The trial court granted the Regents' motion for summary judgment. We affirm, holding that the "fear of cancer" rule announced in *Potter* v. *Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965 [25 Cal.Rptr.2d 550, 863 P.2d 795], applies to a case based upon fear of AIDS (acquired immune deficiency syndrome).

### FACTS

On May 30, 1990, Linda Herbert took Jonathan to the UCLA Medical Center after he drank some liquid Tylenol with codeine. A doctor in the pediatric ward examined Jonathan, then directed Mrs. Herbert and Jonathan to wait in an examination room. A few minutes later, Mrs. Herbert went across the hall, telling Jonathan to stay on the bed while she tried to call his father. Jonathan got off the bed, explored the room, found a "needle box" on the floor under a sink and opened it to find a bunch of used and discarded needles and syringes. At that point, Mrs. Herbert looked into the room, saw what Jonathan was doing and saw there was blood on his left hand. She returned to the room, at which point Jonathan tried to hide behind the door. When she asked him what he was doing, he dropped two needles onto the floor. Mrs. Herbert picked them up and "threw them in the trash."

The "first thing" Mrs. Herbert thought of was AIDS. She called a passing nurse, who cleaned a small scratch on Jonathan's hand. A few minutes later, they were joined by John Kevill, M.D., who said it was possible that one or more of the needles could have been used on an AIDS patient since there had been an "AIDS clinic" in the pediatric ward the previous day. Dr. Kevill went on to explain that no one knew or could determine whether that particular room had been used for an AIDS patient but that, even if it had and even if they assumed the needle which scratched Jonathan's hand was contaminated, the risk that Jonathan would contract the HIV virus which

causes AIDS was about one-half of 1 percent. Within a few days, Mrs. Herbert was informed that Jonathan tested negative for the HIV virus (and the results have been negative in all subsequent tests).

The needle which scratched Jonathan was discarded before Mrs. Herbert or anyone at UCLA thought to preserve it and, as a result, it could not be determined whether it had, in fact, been contaminated with the HIV virus.

About five months after the incident, Mrs. Herbert sued the Regents for negligent and intentional infliction of emotional distress (the latter claim has been voluntarily abandoned). The Regents answered and discovery was conducted by both sides. In late 1992, the Regents' motion for summary judgment was granted. Mrs. Herbert appeals.

## DISCUSSION

Mrs. Herbert contends she was both a "direct victim" of the Regents' negligence and a "bystander" to negligence directed at Jonathan. She also contends she should be given the opportunity to explain to a trier of fact that it is the Regents' fault that she is unable to establish whether the needle was, in fact, contaminated. Finally, she contends she is entitled to recover for her "fear of AIDS" without regard to whether it is "more likely than not" that Jonathan will ever contract AIDS. Since we disagree with Mrs. Herbert's position on damages, we resolve her appeal on that issue without reaching her other contentions.[1]

### A.

In *Potter* v. *Firestone Tire & Rubber Co.*, *supra*, 6 Cal.4th at pages 973-974, our Supreme Court held that "emotional distress engendered by a fear of cancer *or other serious physical illness* or injury following exposure to a carcinogen or other toxic substance" is *not* an "injury for which damages may be recovered in a negligence action in the absence of physical injury" *unless* the plaintiff is able to plead and prove "that the fear stems from a knowledge, corroborated by reliable medical and scientific opinion, that it is more likely than not that the feared cancer will develop in the future due to the toxic exposure." (Italics added.)

Several policy reasons were cited in support of the court's conclusion. *First*, everyone is exposed to carcinogens every day, thus creating an

---

[1]For purposes of discussion only, we assume Mrs. Herbert could overcome the hurdles to establishing direct victim or bystander liability on these facts. (But see *Golstein* v. *Superior Court* (1990) 223 Cal.App.3d 1415 [273 Cal.Rptr. 270].) We also assume without deciding that it was the Regents' fault the needle was disposed of before it could be tested. With these assumptions made, there are no disputed material facts.

unlimited class of potential plaintiffs which must be restricted by the imposition of some limitation. (*Potter* v. *Firestone Tire & Rubber Co., supra,* 6 Cal.4th at pp. 990-991.) *Second,* the "more likely than not threshold" is necessary to prevent the "unduly detrimental impact that unrestricted fear liability would have in the health care field." (*Id.* at p. 991.) *Third,* allowing recovery to all victims who have a fear of cancer could work to the detriment of those who sustain actual physical injury and those who ultimately develop cancer as a result of toxic exposure by driving the defendant into bankruptcy. (*Id.* at p. 993.) *Fourth,* imposition of the "more likely than not limitation" establishes a "sufficiently definite and predictable threshold for recovery to permit consistent application from case to case. . . . Indeed, without such a threshold, the likelihood of inconsistent results increases since juries may differ over the point at which a plaintiff's fear is a genuine and reasonable fear, i.e., one jury might deem knowledge of a 2 or 5 percent likelihood of future illness or injury to be sufficient . . . , while another jury might not. A more definite threshold will avoid inconsistent results and may contribute to early resolution or settlement of claims." (*Ibid.*)

█ With these points in mind, the court summarized its holding thus: "Unless an express exception to this general rule is recognized: in the absence of a present physical injury or illness, damages for fear of cancer may be recovered only if the plaintiff pleads and proves that (1) as a result of the defendant's negligent breach of a duty owed to the plaintiff, the plaintiff is exposed to a toxic substance which threatens cancer; *and* (2) the plaintiff's fear stems from a knowledge, corroborated by reliable medical or scientific opinion, that it is more likely than not that the plaintiff will develop the cancer in the future due to the toxic exposure. Under this rule, a plaintiff must do more than simply establish knowledge of a toxic ingestion or exposure and a significant increased risk of cancer. *The plaintiff must further show that based upon reliable medical or scientific opinion, the plaintiff harbors a serious fear that the toxic ingestion or exposure was of such magnitude and proportion as to likely result in the feared cancer.*" (*Potter* v. *Firestone Tire & Rubber Co., supra,* 6 Cal.4th at p. 997, second italics added.)

### B.

In the trial court, Dr. Kevill's opinion—that, assuming the needle was contaminated, the risk that Jonathan had contracted AIDS from the scratch was about .5 percent—was uncontroverted. █ On this appeal, Mrs. Herbert claims the likelihood of actual injury to Jonathan is immaterial and that, in short, the rule announced in *Potter* regarding fear of cancer should not be applied to a case involving fear of AIDS. We disagree.

### 1.

First, Mrs. Herbert claims this case falls within the "despicable conduct exception" to the rule announced in *Potter*. In *Potter*, the Supreme Court carved out an exception to the "more likely than not" rule, holding that, "in the absence of a physical injury or illness, a plaintiff may recover damages for negligently inflicted emotional distress engendered by a fear of cancer without meeting the more likely than not threshold if the plaintiff pleads and proves that: (1) as a result of the defendant's negligent breach of a duty owed to the plaintiff, he or she is exposed to a toxic substance which threatens cancer; (2) the defendant, in breaching its duty to the plaintiff, acted with oppression, fraud or malice as defined in Civil Code section 3294; *and* (3) *the plaintiff's fear of cancer stems from a knowledge, corroborated by reliable medical or scientific opinion, that the toxic exposure caused by the defendant's breach of duty has significantly increased the plaintiff's risk of cancer and has resulted in an actual risk of cancer that is significant.*" (*Potter* v. *Firestone Tire & Rubber Co.*, *supra*, 6 Cal.4th at pp. 999-1000, second italics added, fn. omitted.)

Aside from the fact that Mrs. Herbert did not plead oppression, fraud or malice as part of her negligent infliction of emotional distress claim, and aside from the fact that she offered no evidence at all to suggest the Regents were anything other than negligent (in the manner in which the used needles were stored or in failing to preserve the needles which Mrs. Herbert threw into the trash), there is no evidence at all (medical, scientific or otherwise) to corroborate Mrs. Herbert's fear that the Regents' breach of duty resulted in a significant risk that Jonathan would actually acquire AIDS. Indeed, the evidence is to the contrary—that the risk is about .5 percent which is not, by any definition, "significant." As a matter of law, the facts of this case do not come within the exception.

### 2.

Second, Mrs. Herbert contends the policy reasons underlying the decision in *Potter* do not apply to this case because (she claims) the Regents did not simply increase an already existing risk but rather "created a risk which never would have existed but for [the Regents'] negligence." The argument is a red herring. In *Potter*, the defendant illegally dumped toxic wastes which contaminated the plaintiffs' water supply and the plaintiffs' fear of cancer arose from their exposure to the contaminated water. (*Potter* v. *Firestone Tire & Rubber Co.*, *supra*, 6 Cal.4th at pp. 975-976.) In this case, the Regents negligently left contaminated needles where a child could get at them, which

Jonathan did, and Mrs. Herbert's fear of AIDS arises from her son's exposure to the contaminated needle. This is six in one hand, half a dozen in the other.

To the extent Mrs. Herbert contends that, but for this incident, she would have had no reason to fear that her son could or would ever acquire AIDS, we reject the argument as specious. The devastating effects of AIDS and the widespread fear of contamination at home, work, school, health care facilities and elsewhere are, sadly, too well known to require further discussion at this point. (See, e.g., Stats. 1986, ch. 498, § 1, subd. (b), p. 1823 ["Public speculation about the potential for transmission of [the AIDS] virus, the degree of morbidity, and other factors, has led to expression of public fears or anxieties approaching, in some circumstances, panic or hysteria"]; Health & Saf. Code, § 199.45 et seq.)

In short, this is an a fortiori case for application of the rule announced in *Potter.*

DISPOSITION

The judgment is affirmed.

Spencer, P. J., and Masterson, J., concurred.

Appellant's petition for review by the Supreme court was denied October 20, 1994. George, J., was of the opinion that the petition should be granted.