DARYL E. MALENA AND AUDREY A. MALENA, HUSBAND AND WIFE, APPELLEES, V. MARRIOTT INTERNATIONAL, INC., A DELAWARE CORPORATION, APPELLANT.

651 N.W.2d 850

Filed October 11, 2002. No. S-00-1285.

Melvin C. Hansen, Judith A. Wolf, and William Gilner for appellant.

James S. Mitchell, Kathryn J. Derr, and Clifford T. Lee, of Rasmussen & Mitchell, for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

Marriott International, Inc. (Marriott), appeals from a jury verdict in favor of the appellees, Daryl E. Malena and Audrey A. Malena, husband and wife, for damages sustained when Audrey was stuck by a needle in a California hotel room. Marriott contends that the district court erred in refusing to instruct the jury on California law concerning Audrey's damages for fear of testing positive for human immunodeficiency virus (HIV) and contracting acquired immunodeficiency syndrome (AIDS). We agree that there is a difference between Nebraska and California law and that California law should have been applied. Accordingly, we reverse, and remand for a new trial.

## BACKGROUND

On September 22, 1994, the Malenas, who are residents of Nebraska, stayed at the San Francisco Marriott Hotel in California. While in the hotel room, Audrey placed the cap of a lotion bottle on the nightstand and it rolled off. Audrey reached under the nightstand, attempting to retrieve the cap, and felt a sharp jab in her hand. Audrey pulled her hand out from under the nightstand and saw a hypodermic needle and syringe stuck in her hand. The needle was through her skin and into the muscle. She also felt a cold tingling sensation moving up her arm.

Immediately after the incident, Daryl called several AIDS hotline numbers. Because of the information he received, Audrey went the next morning to a medical center in San Francisco,

where she was treated. The Malenas then returned to Nebraska, and Audrey saw her personal physician and an infectious disease specialist. Between September 1994 and February 1996, she underwent a series of blood tests to determine the presence of HIV, hepatitis antibodies, and syphilis. The results of the tests were negative. The needle and syringe were not tested.

At the time of the incident, the Malenas' daughter Rachel was ill with myelofibrosis, a disease of the bone marrow, and had previously received a bone marrow transplant from her sister to treat the illness. Because of the transplant, Rachel required blood platelet donations, which were more effective if she received them from her immediate family. From January 1994 until the incident in September, Audrey had donated platelets at least seven times. After the incident, Audrey was unable to donate platelets because of her potential exposure to HIV and other diseases. Rachel died in December 1994 from complications related to her disease. Before Audrey was stuck by the needle, she had been treated for depression and anxiety related to Rachel's illness.

The Malenas filed suit against Marriott alleging that Marriott was negligent in failing to protect them from dangerous conditions on the hotel premises caused by its failure to discover and remove the hypodermic needle and syringe. They alleged special damages in the amount of $641.30 for Audrey's medical expenses. They further sought damages for Audrey's mental suffering because of her fear of contracting AIDS or hepatitis and for emotional distress for her inability to donate blood platelets. They also sought damages for Daryl's loss of companionship and consortium.

Marriott generally denied the allegations. Marriott moved for summary judgment alleging that the case was governed by the substantive law of California and that under California law, the Malenas were precluded from recovery. The motion was denied.

At trial, the district court determined that any damages attributable to Audrey's fear of contracting AIDS were controlled by Nebraska law. Marriott's requests for jury instructions on California law were denied. The jury found for the Malenas and awarded Audrey $200,000 in damages. Daryl was awarded $17,500 in damages. Marriott appeals.

## ASSIGNMENTS OF ERROR

Marriott assigns, rephrased, that the district court erred in (1) failing to instruct the jury on the substantive law of California regarding fear of AIDS and parasitic damages, (2) refusing a requested instruction about whether Audrey's fear of infection was reasonable and genuine under Nebraska law, and (3) admitting certain exhibits into evidence.

## STANDARD OF REVIEW

■ In a personal injury action, the question of whether to apply the law of the state where the injury occurred or the law of another state is a question of law. See *Deuth v. Ratigan*, 256 Neb. 419, 590 N.W.2d 366 (1999).

■ To establish reversible error from a trial court's refusal to give a requested instruction, an appellant must prove that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *Austin v. State Farm Mut. Auto. Ins. Co.*, 261 Neb. 697, 625 N.W.2d 213 (2001). Whether a jury instruction given by a trial court is correct is a question of law. *Smith v. Fire Ins. Exch. of Los Angeles*, 261 Neb. 857, 626 N.W.2d 534 (2001).

■ An appellate court decides a question of law independently of the conclusion reached by the trial court. *Id.*

## ANALYSIS

Marriott contends that the jury should have been instructed on California law concerning parasitic damages for fear of contracting a disease. Marriott argues that under California law, Audrey cannot recover for fear of contracting a disease unless it is more likely than not that she will contract AIDS from her exposure to a substance in the needle. The Malenas contend that California and Nebraska laws do not conflict. In the alternative, they contend that Nebraska law should apply.

### DIFFERENCE BETWEEN NEBRASKA AND CALIFORNIA LAW

■ We first address the difference between Nebraska law and California law on the proof necessary to recover parasitic damages for fear of developing a future disease. "[B]efore entangling itself in messy issues of conflict of laws a court ought to

satisfy itself that there actually is a difference between the relevant laws of the different states." *Barron v. Ford Motor Co. of Canada Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992). Parasitic damages are damages occasioned by anxiety specifically from a reasonable fear of a future harm attributable to a physical injury caused by the defendant's negligence. *Hartwig v. Oregon Trail Eye Clinic*, 254 Neb. 777, 580 N.W.2d 86 (1998).

In *Hartwig*, we addressed whether a plaintiff who sustains an injury such as a needle stick can recover parasitic damages for anxiety and mental suffering caused by fear of contracting AIDS without showing actual exposure to infected body fluids. In addressing the issue, we cited and discussed cases from other jurisdictions, including California, that require proof of actual exposure to infected body fluids before parasitic damages can be recovered. In particular, we noted that under California law:

> [A]n ordinary needle stick does not give rise to parasitic damages for emotional distress and mental suffering unless a hazardous foreign substance is introduced into the body through the needle and causes detrimental changes to the body. Absent such detrimental change, in order to recover damages for a fear of contracting an illness, the plaintiff's fear must result from knowledge, corroborated by reliable medical or scientific opinion, that it is more likely than not that the plaintiff will develop such illness in the future due to the exposure.

*Id.* at 786, 580 N.W.2d at 92, citing *Macy's Cal., Inc. v. Superior Court*, 41 Cal. App. 4th 744, 48 Cal. Rptr. 2d 496 (1995).

■ Noting that modern medicine treats a potential exposure the same as an actual exposure, we disagreed with the rule adopted by jurisdictions such as California. We adopted a different rule. Instead of requiring proof of actual exposure, we held:

> [A] plaintiff may adduce proof and potentially recover damages for the mental anguish of reasonably fearing AIDS resulting from a physical injury when the plaintiff may have been exposed, via a medically sufficient channel of transmission, to the tissue, blood, or body fluid of another in circumstances where the identity of the patient upon whom the contaminated needle or instrument was used is unknown, and when it is impossible or impracticable to

ascertain whether any such tissue, blood, or body fluid may be HIV positive.

*Hartwig*, 254 Neb. at 790-91, 580 N.W.2d at 94.

We then held that when the elements are met, a plaintiff may adduce proof of, and potentially recover, parasitic damages for the " 'window of anxiety' " during which the plaintiff's fear of HIV infection and contraction of AIDS was reasonable and genuine and resulted in mental suffering occasioned by a physical injury for which he or she could receive compensation. *Id.* at 791, 580 N.W.2d at 94.

California has specifically rejected the test that we adopted in *Hartwig*. In *Potter v. Firestone Tire and Rubber Co.*, 6 Cal. 4th 965, 863 P.2d 795, 25 Cal. Rptr. 2d 550 (1993), a case involving exposure to toxic substances and fear of developing cancer, the California Supreme Court discussed concerns about the speculative nature of damages for fear of developing an illness based merely on exposure or a significant increase of the risk that the illness would develop. The court was particularly concerned about the possibility of an increase in unreasonable claims and the effect on society of an increase in the number of lawsuits. As a result, the court limited the availability of a plaintiff to recover. The court held that where there is an absence of present physical injury or illness, parasitic damages for fear of developing cancer may be recovered only if the plaintiff pleads and proves that

> (1) as a result of the defendant's negligent breach of a duty owed to the plaintiff, the plaintiff is exposed to a toxic substance which threatens [illness]; *and* (2) the plaintiff's fear stems from a knowledge, corroborated by reliable medical or scientific opinion, that it is more likely than not that the plaintiff will develop the [illness] in the future due to the toxic exposure.

*Id.* at 997, 863 P.2d at 816, 25 Cal. Rptr. 2d at 571. The court stated that the rule required more than knowledge of exposure or a significant increase in risk.

The "more likely than not test" set out in *Potter* was first applied to a case involving fear of AIDS in *Kerins v. Hartley*, 27 Cal. App. 4th 1062, 33 Cal. Rptr. 2d 172 (1994). The Court of Appeal in *Kerins* had initially adopted a "window of anxiety" test like the test followed in Nebraska, but on petition for review,

the California Supreme Court transferred the matter back with directions to vacate and reconsider in light of *Potter, supra.* The Court of Appeal then applied the "more likely than not" rule from *Potter.*

The *Potter* test was applied again in *Herbert v. Regents of Univ. of Cal.*, 26 Cal. App. 4th 782, 31 Cal. Rptr. 2d 709 (1994). In *Herbert*, a child was stuck or scratched by a needle while waiting in an examination room at a medical center. The child's mother brought suit and sought damages for fear that her child would contract AIDS, and the trial court granted the medical center's motion for summary judgment. On appeal, the mother argued that the "more likely than not" test from *Potter, supra*, should not be applied to a fear of AIDS case. For purposes of its discussion, the court assumed that the mother could establish direct victim or bystander liability, applied the more likely than not test from *Potter* to the case, and affirmed.

In *Macy's Cal., Inc. v. Superior Court*, 41 Cal. App. 4th 744, 48 Cal. Rptr. 2d 496 (1995), another division of the California Court of Appeal agreed that in the absence of a physical injury, the plaintiff was required to plead and prove that it was "more likely than not" that he or she would develop an illness. The plaintiff in *Macy's Cal., Inc.* was stuck by a needle that was left in the pocket of a jacket she was trying on in a department store.

The *Macy's Cal., Inc.* court discussed the definition of physical injury and whether the plaintiff was required to show that it was more likely than not that she would develop a disease. The court determined that the plaintiff was required to have "actual harm," *id.* at 756, 48 Cal. Rptr. 2d at 504, in order to escape the "more likely than not" test. The court stated:

> The question before us is whether a routine needle stick constitutes harm for purposes of parasitic damages. We conclude it does not. In a routine needle stick, harm, if it occurs, takes place when a hazardous foreign substance, introduced to the body through the needle, causes detrimental change to the body. Only if the plaintiff proves detrimental change to the body may he or she recover parasitic emotional distress damages. Without such proof, the plaintiff must satisfy *Potter's* more likely than not test.

*Id.* at 756, 48 Cal. Rptr. 2d at 504.

The decision in *Macy's Cal., Inc.* illustrates that under California law, physical injury for purposes of parasitic damages does not occur when the needle punctures the skin or causes some form of injury not related to the feared disease. Instead, in order to escape from the "more likely than not" test, the plaintiff has to prove that a substance entered the body and caused a detrimental change to the body. Thus, as we recognized in *Hartwig v. Oregon Trail Eye Clinic*, 254 Neb. 777, 580 N.W.2d 86 (1998), the law of California is stricter than the rule in Nebraska. Nebraska does not require actual exposure to infected body fluids and allows recovery for a reasonable window of anxiety. California, however, requires an actual exposure under its definition of physical injury or harm in an incident where a needle punctures the skin. In the absence of actual exposure, California requires the plaintiff to prove that it is more likely than not that he or she will develop the feared illness. We recognized this distinction when we decided *Hartwig*. We determine that California law applies a different rule than the window of anxiety test we adopted in *Hartwig*. Accordingly, we next address which state law applies.

## CHOICE OF LAW

Marriott contends that California law applies and that the district court erred in failing to instruct the jury on California's "more likely than not test." In choice-of-law determinations for personal injury claims, we have adopted Restatement (Second) of Conflict of Laws § 146 (1971). See *Harper v. Silva*, 224 Neb. 645, 399 N.W.2d 826 (1987). Section 146 is the starting point for any choice-of-law analysis in personal injury claims and provides:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

*Id.* at 430. Under § 146, the presumption is that California law applies unless Nebraska has a more significant relationship to the parties and the occurrence with respect to a particular issue.

Although § 146 is the starting point, the Restatement, *supra*, § 158, comment *a.* at 485, specifically deals with "the circumstances under which there may be recovery for emotional distress . . . or that the distress be accompanied by some physical impact." The Restatement provides that "the applicable law will usually be the local law of the state where the injury occurred," § 158(2) at 484, and directs a court to apply the Restatement, *supra*, § 145, to select the law that determines whether "the interest affected is entitled to legal protection." § 158(1) at 484.

Section 145 at 414 is the "most significant relationship" test used for determining the applicable law for specific tort claim issues. See Restatement, *supra*, §§ 156 to 174. Section 145(2) provides the contacts that a court should consider when determining which state has the most significant relationship to the parties and the occurrence under the general conflict of law principles stated in § 6(2) of the Restatement. The contacts under § 145(2) are as follows:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

Under § 145(2), Audrey's injury and the conduct causing the injury occurred in California. To the extent the parties had a relationship, it is centered in California. The Malenas did not allege that Marriott induced them to spend their vacation at their hotel through advertising or other contacts in Nebraska. Thus, the only contact with Nebraska is the Malenas' domicile. These contacts must be balanced in accordance with their significance to the general principles under § 6(2) at 10, which are as follows:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

But the more relevant principles under the Restatement (Second) of Conflict of Laws § 6 (1971) when dealing with tort claims are the needs of the interstate and international systems, the relevant policies of the forum, the relevant policies of other interested states *and particularly of the state with the dominant interest in the determination of the particular issue,* and ease in the determination and application of the law to be applied.

(Emphasis supplied.) Restatement, *supra*, § 145, comment *b*. at 416.

The underlying policy considerations of the conflicting recovery rules for Nebraska and California are important in deciding which state's policy has the most significant relationship. Nebraska has a policy interest in recognizing and placing a value on the injuries suffered by its domiciliaries. But California has counter policy reasons for its limitation on claims entitled to legal protection.

The California Supreme Court in *Potter v. Firestone Tire and Rubber Co.*, 6 Cal. 4th 965, 863 P.2d 795, 25 Cal. Rptr. 2d 550 (1993), stated a concern that unreasonable lawsuits would occur if plaintiffs were able to offer proof of parasitic damages without proof of either actual exposure or that it was more likely than not that an illness would occur. One of the policy reasons for California's "more likely than not" standard is the protection of plaintiffs who actually contract an illness or develop a disease. California courts have feared that a proliferation of claims would result in the reduced ability of defendants and insurers to provide adequate compensation to victims suffering from permanent and serious physical injuries. See, *Potter, supra*; *Kerins v. Hartley*, 27 Cal. App. 4th 1062, 33 Cal. Rptr. 2d 172 (1994). California courts have also expressed concern that unrestricted claims would adversely affect the availability and affordability of liability insurance. *Potter, supra.* See *Kerins, supra.*

Thus, California has stated strong policy interests in protecting its plaintiffs that have a serious illness or injury, encouraging local insurance availability, and reliably defining the scope of liability for defendants within its borders. Those policy interests should be considered the dominant interests when the conduct and injury have occurred in California.

■ In *Crossley v. Pacific Employers Ins. Co.*, 198 Neb. 26, 30, 251 N.W.2d 383, 386 (1977), we cited the Restatement, *supra*, § 146, comment *d.*, and stated that "in virtually all instances where the conduct and the injury occur in the same state, that state has the dominant interest in regulating that conduct and in determining whether it is tortious in character, and whether the interest affected is entitled to legal protection." Other courts hold that a foreign state has the dominant interest in having its tort rules applied when the forum state's only interest in the litigation is compensating its residents. See, e.g., *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842 (7th Cir. 1999); *Blakesley v. Wolford*, 789 F.2d 236 (3d Cir. 1986); *Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854 (1970).

When a person travels to a destination in another state, the visitor should ordinarily anticipate that the foreign state's law will govern any tort which results from conduct and injury occurring there. See *Spinozzi, supra.* "Inhabitants of a state should not be put in jeopardy of liability exceeding that created by their state's laws just because a visitor from a state offering higher protection decides to visit there." *Cipolla*, 439 Pa. at 567, 267 A.2d at 856-57.

Every state has an interest in compensating its domiciliaries for their injuries. But tort rules which limit liability are entitled to the same consideration when determining choice-of-law issues as rules that impose liability. See, *Crossley, supra*; Restatement (Second) of Conflict of Laws § 145, comment *c.* (1971).

A state's choice-of-law rules should recognize a foreign state's dominant interests in a fairly predictable manner. Otherwise, the rules will neither encourage harmonious, interstate relations nor ease the determination of which law to apply. Although we may disagree with California's policy statements and underlying reasons for the "more likely than not" test, choice-of-law principles

also require us to respect California's laws when it has the dominant interest in applying its law.

We conclude that the law of California applies to this case. Thus, the trial court erred when it refused Marriott's requested jury instructions based on California law. We reverse, and remand for a new trial. Because we reverse on the issue of Marriott's requested jury instructions on California law, we do not address Marriott's remaining assignments of error.

REVERSED AND REMANDED FOR A NEW TRIAL.

MILLER-LERMAN, J., concurring.

I concur. I write separately to state that I am puzzled as to how the principles enunciated in *Potter v. Firestone Tire and Rubber Co.*, 6 Cal. 4th 965, 863 P.2d 795, 25 Cal. Rptr. 2d 550 (1993), driven by fear of cancer-related issues, became grafted in toto into the California jurisprudence regarding fear of AIDS. The course and profiles of cancer and AIDS are markedly different, and the fear of cancer due to generalized exposure and fear of AIDS due to a discrete event are not fungible. See, generally, *Hartwig v. Oregon Trail Eye Clinic*, 254 Neb. 777, 580 N.W.2d 86 (1998). I also observe that in the instant case, there is expert testimony that Audrey suffered a "puncture wound," unlike the "prick" in *Macy's Cal., Inc. v. Superior Court*, 41 Cal. App. 4th 744, 48 Cal. Rptr. 2d 496 (1995), which could serve as the physical injury forming the basis for parasitic damages under the jurisprudence of both California and Nebraska. Nevertheless, we are confronted with the pronouncements in *Macy's Cal., Inc.* which, although they may or may not foreshadow what the California Supreme Court would say under the facts of the instant case, we are bound to respect.