MICHAEL R. JOHNSON, APPELLANT, V.
RICHARD W. JOHNSON, JR., ET AL., APPELLEES.

720 N.W.2d 20

Filed August 18, 2006. No. S-04-1396.

James M. Bausch, Terry R. Wittler, Shawn D. Renner, and Pamela Epp Olsen, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellant.

Gerald P. Laughlin, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, L.L.P., and Steven E. Achelpohl for appellees.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

The question presented in this case is whether the substantive law of Nebraska or Delaware applies to a complaint alleging oppression of a shareholder of a Delaware corporation, the sole asset of which is all the stock of a Nebraska corporation. Given the allegations made in this case, we conclude that Delaware law controls whether the plaintiff has stated a cause of action, and therefore, we affirm the judgment of the district court dismissing the plaintiff's complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

A district court's grant of a motion to dismiss for failure to state a claim under Neb. Ct. R. of Pldg. in Civ. Actions 12(b)(6) (rev. 2003) is reviewed de novo, accepting all the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. *State ex rel. Jacob v.*

*Bohn*, 271 Neb. 424, 711 N.W.2d 884 (2006). Dismissal under rule 12(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief. *Spear T Ranch v. Knaub*, 269 Neb. 177, 691 N.W.2d 116 (2005). Because the district court in this case granted the defendants' rule 12(b)(6) motions to dismiss, this statement of facts is taken from the facts alleged in the plaintiff's operative amended complaint.

## ALLEGED FACTS

The plaintiff, Michael R. Johnson, is a shareholder of Western Securities, a Delaware corporation. Michael is an employee of Modern Equipment Company, Inc. (Modern Equipment), a Nebraska corporation. The principal place of business for both Western Securities and Modern Equipment is Omaha, Nebraska. Western Securities owns all the stock of Modern Equipment, but no other property.

Richard W. "Dick" Johnson incorporated and was originally the sole shareholder and director of Western Securities. Dick is the father of Michael and Richard W. Johnson, Jr. (Richard), one of the defendants. In 1975, Western Securities acquired Modern Equipment, and Dick became the sole director of Modern Equipment as well.

In 1990, Michael moved to Omaha and began working full time for Modern Equipment. He worked full time until 1992, when he began to work both full and part time while he completed a college degree. He completed his degree in 1996 and became a vice president of Modern Equipment, responsible for quality management. Michael's duties later expanded to include corporate development. He received regular salary increases and excellent performance reviews on an annual basis.

In 1998, Dick transferred shares of stock in Western Securities to his five children: Michael, Richard, William Johnson, Nancy Johnson Holtan, and Thomas Johnson. After the transfers, Dick owned 75 percent of Western Securities stock, Richard 10 percent, Michael 6 percent, William 3.5 percent, Nancy 3.5 percent, and Thomas 2 percent. Dick's stated intent was that Richard would succeed Dick as president and chief executive officer of Modern Equipment and that Michael would in turn succeed Richard. Dick promised Michael and Richard that Dick's Western

Securities stock would be devised to them in equal shares. After October 3, 2000, Western Securities and Modern Equipment each had three-member boards of directors composed of Michael, Richard, and Dick.

Dick became ill in March 2001 and resigned as president of Modern Equipment in October. Richard was elected by Dick, Richard, and Michael to succeed Dick as president. Dick died on November 6, and his will provided that Michael and Richard were each to receive one-half of Dick's shares of Western Securities stock. Richard was appointed personal representative of Dick's estate.

After Dick's death, Richard appointed Modern Equipment's vice president of manufacturing to fill the vacancies on the boards of directors of Western Securities and Modern Equipment, without notice to, meeting of, or the knowledge or consent of the other shareholders. On August 28, 2002, Richard fired Michael and barred him from the premises of Modern Equipment. Since then, Michael has been denied any participation in the operation of Modern Equipment and has not shared in its earnings.

Modern Equipment's before-tax profits have declined from $374,745 in the fiscal year ending August 31, 2001, to $5,367 in the following fiscal year. Richard's 2002 salary was $187,000, which was a 22-percent raise from the previous year. Western Securities has never paid dividends, and between Dick's death and February 28, 2003, no shareholders' meetings for Western Securities or Modern Equipment were held.

On February 28, 2003, Michael notified counsel for Western Securities and Modern Equipment of Richard's conduct. Shortly thereafter, Michael was notified that meetings of the shareholders and boards of directors of Western Securities and Modern Equipment would be held on April 15. At those meetings, Richard, in his capacity as personal representative of Dick's estate, voted all the shares of stock then still held in the estate to ratify his prior conduct. Dick's Western Securities stock was finally distributed by his estate in 2004, after which time, Richard held 48.083 percent of the stock, Michael held 44.083 percent, William and Nancy held 3.5 percent each, and Thomas held five-sixths of 1 percent.

## PROCEDURAL HISTORY

Michael filed suit in the district court on May 22, 2003, against Richard, Western Securities, and Modern Equipment (collectively the defendants). According to Michael, Richard had oppressed Michael and misapplied the corporate assets of Western Securities and Modern Equipment by depriving him of his legitimate expectation of full-time employment; depriving him of his right to meaningfully participate in the operation, management, and control of Modern Equipment; operating Modern Equipment for his own benefit to the detriment of Michael; eliminating financial benefits to which Michael had a reasonable expectancy; removing Michael from his employment and denying him the opportunity to serve as president; and failing to keep him fully and fairly informed of the operation of Modern Equipment. Michael alleged that these practices were oppressive because they violated the reasonable expectations of Michael as established by the intentions of Dick and years of past practice, and were also in breach of the fiduciary duties owed to Michael.

Michael prayed that the court require an accounting from Richard and require him to return to Modern Equipment any amounts received by him in excess of the proportionate share of earnings and profits, as well as any amounts attributable to a misapplication or misappropriation of company assets. Michael prayed that the court require Modern Equipment to pay Michael the funds to which he would have been entitled had he not been excluded from employment and participation in Modern Equipment's earnings and profits.

Michael also prayed that the court enter an order requiring Western Securities to cease carrying on business in Nebraska, appointing a receiver to take charge of the corporate assets of Western Securities and Modern Equipment and supervise the sale of those assets, and distributing the proceeds of the sale of Western Securities and Modern Equipment to Michael and the other shareholders of Western Securities. In the alternative, Michael prayed that the court enter an order finding Western Securities to be the corporate alter ego of Modern Equipment and/or imposing a constructive trust on the shares of Modern Equipment for the benefit of Michael, dissolving Modern Equipment, appointing a receiver to supervise the sale of Modern

Equipment's assets, and distributing the proceeds of the sale directly to Western Securities' shareholders in proportion to their ownership interests. Alternatively, Michael prayed for an order finding Western Securities to be the alter ego of Modern Equipment and directing Western Securities or its remaining shareholders to redeem Michael's interests for fair market value.

Richard, Western Securities, and Modern Equipment filed motions to dismiss Michael's complaint. The defendants claimed that the court lacked jurisdiction to dissolve Western Securities, as a Delaware corporation, or to order Western Securities to redeem Michael's interest. Alternatively, the defendants claimed neither dissolution nor a court-ordered buyout was allowed as a matter of law and that Michael lacked standing to seek dissolution of Modern Equipment.

The court granted the defendants' motions. The court reasoned that it could not dissolve or wind up the affairs of Western Securities because it was a Delaware corporation. Even assuming that it had jurisdiction over Western Securities, however, the court further concluded that the case dealt with the internal affairs of the corporation and that under the applicable choice-of-law principles, the need for uniformity regarding internal affairs dictated that Delaware law control the case. Because Delaware law did not permit the dissolution of Western Securities or appointment of a receiver under the facts alleged, the court dismissed Michael's complaint.

## ASSIGNMENTS OF ERROR

Michael assigns that the district court erred (1) in concluding that Delaware law applied to the facts of this case and in granting the defendants' motions to dismiss on that basis, thus (a) holding that the internal affairs doctrine prohibited the application of Nebraska law in this case, (b) holding that considerations of uniformity and predictability prohibited the application of Nebraska law in this case, and (c) concluding that Nebraska public policy does not mandate the application of Nebraska law in this case; (2) in concluding that Michael sought dissolution of a foreign corporation and in concluding that the inclusion of a proposed remedy relating to the appointment of a receiver and the winding up of Western Securities' business in Nebraska required dismissal; and (3) in refusing to address the viability of

Michael's remaining proposed remedies and in thereby conclud-
ing that the court could not fashion a remedy for Michael in the
exercise of its equitable powers.

## STANDARD OF REVIEW

A district court's grant of a motion to dismiss for failure to
state a claim under rule 12(b)(6) is reviewed de novo, accepting
all the allegations in the complaint as true and drawing all rea-
sonable inferences in favor of the nonmoving party. *State ex rel.
Jacob v. Bohn*, 271 Neb. 424, 711 N.W.2d 884 (2006).

## ANALYSIS

It is important to note at the outset that the parties frame the
issues in this case in different ways. The defendants contend,
first, that the Nebraska courts do not have jurisdiction to grant
Michael relief in this dispute because Michael effectively seeks
judicial dissolution of a foreign corporation. The defendants fur-
ther contend that even assuming jurisdiction, Delaware law gov-
erns this dispute, affording no remedy to Michael under the facts
alleged, so Michael has still failed to state a claim upon which
relief can be granted.

Michael does not contest the legal proposition that a court
cannot order the dissolution of a foreign corporation. Rather,
Michael contends that he does not seek the dissolution of
Western Enterprises. Nor does Michael take issue with the
district court's conclusion that under Delaware law, he is with-
out a remedy. We have no reason to revisit that conclusion; we
are not asked to decide that issue. Rather, Michael contends that
Nebraska law should be applied to fashion a remedy for him.

We begin our analysis of these contentions with an ex-
amination of the internal affairs doctrine. The internal affairs
doctrine is a conflict of laws principle which recognizes that only
one state should have the authority to regulate a corporation's
internal affairs—matters peculiar to the relationships among or
between the corporation and its current officers, directors, and
shareholders—because otherwise, a corporation could be faced
with conflicting demands. *Edgar v. MITE Corp.*, 457 U.S. 624,
102 S. Ct. 2629, 73 L. Ed. 2d 269 (1982). The internal affairs
doctrine is codified in Nebraska law pursuant to Neb. Rev. Stat.
§ 21-20,172 (Reissue 1997), which provides:

(1) A certificate of authority shall authorize the foreign corporation to which it is issued to transact business in this state subject, however, to the right of the state to revoke the certificate as provided in the Business Corporation Act.

(2) A foreign corporation with a valid certificate of authority shall have the same but no greater rights and shall have the same but no greater privileges as, and except as otherwise provided by the act, shall be subject to the same duties, restrictions, penalties, and liabilities now or later imposed on, a domestic corporation of like character.

(3) *The act shall not be construed to authorize this state to regulate the organization or internal affairs of a foreign corporation authorized to transact business in this state.*

(Emphasis supplied.) Section 21-20,172(3) was intended to preserve "the judicially developed doctrine that internal corporate affairs are governed by the state of incorporation even when the corporation's business and assets are located primarily in other states." 4 Model Business Corporation Act Ann. § 15.05(c), official comment at 15-71 (3d ed. 2002). See Restatement (Second) of Conflict of Laws § 302 (1971).

The internal affairs doctrine was developed on the premise that in order to prevent corporations from being subjected to inconsistent legal standards, the authority to regulate a corporation's internal affairs should not rest with multiple jurisdictions. By providing certainty and predictability, the internal affairs doctrine protects the justified expectations of the parties with interests in the corporation. *Vantagepoint v. Examen, Inc.*, 871 A.2d 1108 (Del. 2005). See, e.g., *Harrison v. NetCentric Corporation*, 433 Mass. 465, 744 N.E.2d 622 (2001). It has also been held that pursuant to the Due Process Clause, directors and officers of corporations have a significant right to know what law will be applied to their actions and stockholders have a right to know by what standards of accountability they may hold those managing the corporation's business and affairs. *Vantagepoint, supra.* Furthermore, under the Commerce Clause, a state has no interest in regulating the internal affairs of foreign corporations. Therefore, application of the internal affairs doctrine may be mandated by constitutional principles, except in the rare situation when the law of the state of incorporation is

inconsistent with a national policy on foreign or interstate commerce. *Vantagepoint, supra.*

But the internal affairs doctrine is a choice-of-law principle, and not a bar to jurisdiction. Therefore, whether or not a dispute concerning the internal affairs of a foreign corporation should be heard in the courts of Nebraska is not controlled by the internal affairs doctrine, but by the same principles of personal jurisdiction and forum non conveniens that would be applicable to any other suit involving an out-of-state defendant. See *Tomran v. Passano*, 159 Md. App. 706, 862 A.2d 453 (2004), *affirmed* 391 Md. 1, 891 A.2d 336 (2006). In other words, the question of what state's law will determine a cause is separate from whether a state's courts have jurisdiction over the cause. A court will exercise jurisdiction over an action involving the internal affairs of a corporation unless it is an inappropriate or an inconvenient forum for the trial of the action. Restatement, *supra*, § 313.

Here, there is no suggestion by the defendants that this is not a convenient place for trial of the action, nor did the defendants file a motion to dismiss based upon forum non conveniens. Instead, the defendants' jurisdictional argument is premised on their claim that Michael's prayer for relief would effectively be a dissolution of the corporation.

However, the defendants' argument is based on their claim that since Western Securities' assets consist of Modern Equipment stock, disposing of those assets would effectively dissolve Western Securities. But while the general rule is that a court of equity cannot appoint a *general* receiver for a foreign corporation, there is an important distinction between the appointment of a general receiver and the appointment of a receiver merely of the corporation's assets and property within the state. See, generally, 17A William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Private Corporations § 8555 (perm. ed., rev. vol. 1998 & Cum. Supp. 2005). It is well established, in Nebraska and elsewhere, that equity has jurisdiction to appoint a receiver for the instate assets of a foreign corporation. See, *Starr v. Bankers Union of the World*, 81 Neb. 377, 116 N.W. 61 (1908); 17A Fletcher et al., *supra*. The defendants seem to be implying that if Western Securities had assets in other states, then Nebraska could dispose of the assets that the

corporation has here, but since all of Western Securities' assets are in Nebraska (i.e., shares of a Nebraska corporation), the State of Nebraska actually has *less* power than it would if Western Securities' assets were spread around the world. In fact, a Nebraska court's equitable jurisdiction extends to appointment of a receiver for a foreign corporation's Nebraska assets. See *id*.

Furthermore, Michael's complaint suggested several alternative forms of relief beyond the appointment of a receiver. Among other things, Michael asked for an accounting, an order directing Richard to return money received by him to Modern Equipment, damages in the amount Michael would have received had he not been excluded from Modern Equipment, or an order directing Western Securities to redeem his interest. Thus, we are not persuaded by the defendants' argument that the courts of Nebraska lack jurisdiction over this action. If Michael stated a cause of action for which relief could be granted, a Nebraska court would have the power to grant at least some of the relief sought by Michael's complaint, including the appointment of a receiver. The district court erred in determining otherwise. Therefore, we turn to the dispositive question whether Michael can obtain *any* relief from Nebraska law, or whether Delaware law controls this case and precludes his recovery.

Michael does not dispute that his action involves the internal affairs of Western Enterprises and that the internal affairs doctrine is applicable. Rather, Michael contends that under exceptions to that doctrine, Nebraska law should apply here. The Restatement (Second) of Conflict of Laws § 302 (1971) recognizes that the local law of the state of incorporation applies to internal affairs, except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which case, the local law of the other state will be applied. Where "internal affairs" are concerned—the relations among the corporation, its shareholders, directors, officers, or agents—the local law of the state of incorporation will be applied unless application of the local law of some other state is required by reason of the overriding interest of that other state in the issue to be decided. See *id.*, comments *a.* and *b.* As previously noted, the rule of § 302 has been adopted in Nebraska by statute. See, § 21-20,172(3);

4 Model Business Corporation Act Ann. § 15.05(c) (3d ed. 2002).

 The factors applicable to such a choice of law include (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in the determination and application of the law to be applied. Restatement, *supra*, § 6. Accord, *Johnson v. United States Fidelity & Guar. Co.*, 269 Neb. 731, 696 N.W.2d 431 (2005); *Malena v. Marriott International*, 264 Neb. 759, 651 N.W.2d 850 (2002); *Mertz v. Pharmacists Mut. Ins. Co.*, 261 Neb. 704, 625 N.W.2d 197 (2001). See Restatement, *supra*, § 302(1) (explaining that Restatement, *supra*, § 6, is used to determine applicable law).

Michael is focused on Nebraska public policy and Nebraska's relative interest as the location of the alleged events giving rise to the action. But this overlooks the weight of factors that bear against interference with the internal affairs of a foreign corporation. A single rule for each corporation's internal affairs reduces uncertainty and the prospect of inconsistent obligations; it also enables the corporate venturers to adjust the many variables of the corporate life, confident that they can predict the legal effect of these choices. *Nagy v. Riblet Products Corp.*, 79 F.3d 572 (7th Cir. 1996).

> Large corporations that are listed on national exchanges, or even regional exchanges, will have shareholders in many States and shares that are traded frequently. The markets that facilitate this national and international participation in ownership of corporations are essential for providing capital not only for new enterprises but also for established companies that need to expand their businesses. This beneficial free market system depends at its core upon the fact that a corporation—except in the rarest situations—is organized under, and governed by, the law of a single jurisdiction, traditionally the corporate law of the State of its incorporation.

*CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 90, 107 S. Ct. 1637, 95 L. Ed. 2d 67 (1987). As the Restatement explains:

> Application of the local law of the state of incorporation will usually be supported by those choice-of-law factors favoring the needs of the interstate and international systems, certainty, predictability and uniformity of result, protection of the justified expectations of the parties and ease in the application of the law to be applied. Usually, application of this law will also be supported by the factor looking toward implementation of the relevant policies of the state with the dominant interest in the decision of the particular issue.
>
> Uniform treatment of directors, officers and shareholders is an important objective which can only be attained by having the rights and liabilities of those persons with respect to the corporation governed by a single law. To the extent that they think about the matter, these persons would usually expect that their rights and duties with respect to the corporation would be determined by the local law of the state of incorporation. This state is also easy to identify, and thus the value of ease of application is attained when the local law of this state is applied.

Restatement (Second) of Conflict of Laws § 302, comment *e.* at 309 (1971).

Here, Nebraska certainly has an interest in the dispute by virtue of Modern Equipment's location in the state. Nebraska has a declared public policy, pursuant to the Business Corporation Act, see Neb. Rev. Stat. § 21-2001 et seq. (Reissue 1997 & Cum. Supp. 2004), of affording relief upon some of the allegations made by Michael. But Nebraska also has a stated public policy, enacted as part of the same statutory scheme, of not interfering in the internal affairs of foreign corporations, and the conflict of laws principles stated in § 6 of the Restatement generally weigh in favor of applying Delaware law to this dispute. Admittedly, the reasons for applying the local law of the state of incorporation carry less weight when the corporation has little or no contact with the state other than the fact that it was incorporated there. Restatement, *supra*, § 302, comment *g*. But, application of the local law of the state of incorporation also furthers certainty,

predictability, and uniformity of result, ease in the application of the law to be applied, and perhaps most important, protection of the justified expectations of the parties. See *id.* Simply stated, stockholders in a foreign corporation should not be surprised—and under Nebraska statutes have a right to expect—that issues involving the internal affairs of a corporation will be decided pursuant to the law of the state of incorporation. This is simply not the extraordinary case in which the internal affairs doctrine is to be set aside.

Michael also argues that Western Securities and Modern Equipment are alter egos and that Western Securities' corporate veil can be pierced. To the extent that Michael's alter ego theory is intended to address the internal affairs doctrine, however, it is without merit. It is well established that when determining whether to pierce a corporate veil, the local law of the state of incorporation is applied. See *Kellers Systems v. Transport Intern. Pool,* 172 F. Supp. 2d 992 (N.D. Ill. 2001). Stated another way, whether Western Securities and Modern Equipment are alter egos, and the legal effect of such a finding, is determined by Delaware law. While Delaware law permits a corporate veil to be pierced, this is simply a remedy available when a cause of action has been alleged, and as previously noted, Michael does not contest the district court's conclusion that the facts he alleged do not state a cause of action recognized by Delaware law. In other words, even if Delaware law would regard Western Securities and Modern Equipment to be one and the same, Michael has not stated a cause of action against either corporation.

## CONCLUSION

For the foregoing reasons, the judgment of the district court dismissing Michael's complaint is affirmed.

AFFIRMED.

WRIGHT, J., not participating.